(No. 35558.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES STRONG, Plaintiff in Error.

*Opinion filed January 20, 1961.—Rehearing denied March 27, 1961.*

JOHN C. TUCKER, of Chicago, for plaintiff in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, James Strong, was indicted in the criminal court of Cook County on three counts of unlawfully selling, dispensing, and possessing heroin. (Ill. Rev. Stat. 1959, chap. 38, sec. 192.28—38.) He pleaded not guilty and upon being found guilty by a jury was sentenced to the penitentiary for a term of 25 years to life. He prosecutes this writ of error for review contending that an improper instruction was given to the jury; that the verdict and sentence were void; and that the conviction was obtained upon evidence procured by entrapment.

To determine the merit of these contentions we have carefully examined the entire record. Four witnesses testified for the prosecution; the defendant was the sole wit-

ness in his own defense. The principal witness for the prosecution was one Johnson, a Federal agent. Another agent, Irvin, was present at the time of defendant's arrest. A third agent, Sweeney, participated in a "field test" of the narcotic shortly after it was obtained by Johnson, and was present in the office of the Bureau of Narcotics after the defendant had been arrested, at which time the defendant was said to have made an oral confession. The fourth witness was a chemist who identified the object of the alleged sale as a narcotic.

Johnson testified that on September 29, 1958, he and Sweeney met one Reynolds, an informer, on a street corner in the city of Chicago. Johnson and Reynolds then walked to a hotel where the defendant resided and went to defendant's room. Reynolds introduced Johnson as "my man from Dayton, Ohio, and he is the cat I told you wanted to get the stuff today." Johnson represented that he was a dealer in dope, asked to purchase drugs from the defendant and gave him $50 in marked bills in exchange for a brown paper package containing a quantity of heroin. The following day Johnson contacted the defendant and asked to purchase drugs, using the terms of "stuff" or "horse." He was unable to make a purchase because, as he testified, the defendant said "I ain't seen my man yet."

Johnson met the defendant more than three months later on January 6 or 7, 1959, in a pool hall and stated that he wanted to do some more business. Upon meeting refusal he identified himself as a Federal agent and arrested the defendant, who was then driven by Irvin to the Chicago Post Office Building. The defendant was released on $50 bail upon the understanding that he would assist the Federal agents to apprehend dope peddlers. In March of 1959 Johnson made a memorandum of a purported oral confession of the defendant. In this memorandum he stated that Irvin was present at the time of the oral confession, but Irvin testified to the contrary. The memorandum does not

appear in the record, although it was introduced in evidence.

In April the defendant was taken into custody after indictment by the grand jury, and his bail set at $10,000.

The defendant testified that the informer, Reynolds, brought a package to his room and left it there without explaining what it contained, saying that he would return in about 45 minutes. Reynolds did return in that time accompanied by Johnson. Reynolds asked the defendant to give the package to Johnson, which he did, whereupon Johnson gave the defendant $50. The defendant said that the money should go to Reynolds but Reynolds asked the defendant to keep the money and bring it to him that evening. He testified that he took the money to Reynolds later that day. The defendant testified that he did not knowingly sell agent Johnson any narcotics because he was not in the business, did not have any narcotics, did not know where to obtain any and had nothing to do with narcotics. He testified that nothing was said about narcotics on September 29, but that when agent Johnson approached him the following day with a request to purchase drugs he ordered Johnson out of his room. Johnson denied that defendant suggested that Reynolds take the $50, and insisted that he discussed heroin with defendant and said he would return the following day for an ounce. He denied that he was ordered out of defendant's room the following day.

Defendant contends that the verdict was void and will not support the sentence because the counts of the indictment carry different penalties and the jury returned a general verdict "guilty in manner and form as charged in the indictment." The crimes of unlawful sale and unlawful dispensing of narcotics carry penalties of ten years to life for a first offense while the crime of unlawfully possessing narcotics carries a penalty of two to ten years. We cannot agree with defendant's contention. A finding of guilty in manner and form as charged in the indictment is a finding of guilty on each count of the indictment. The felonies

charged are related and the greater includes the lesser, because the sale or dispensing of narcotics includes the element of possession. *People* v. *Keagle,* 7 Ill.2d 408, 412; *People* v. *Bailey,* 391 Ill. 149, 154.

On the question of entrapment we have previously held that if it appears that officers of the law or their agents incited, induced, instigated or lured the accused into committing an offense which he otherwise would not have committed and had no intention of committing, and if a criminal design or intent to commit the offense originates in the mind of one who seeks to entrap the accused and who lures him into the commission merely for the purpose of arresting and prosecuting him, entrapment is established and no conviction may be had. 14 I.L.P. Criminal Law, sec. 50.

Entrapment, defined as the "conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer," is a valid defense. (*Sorrells* v. *United States,* 287 U.S. 435, 77 L. ed. 413.) The question then is whether the defendant was induced to perform an unlawful act or whether he was apprehended by lawful artifice in the execution of a criminal act of his own conception.

The People insist that the defense of entrapment was not raised during the trial and cannot therefore be raised on appeal. This argument is not well taken, because facts suggesting entrapment were presented in detail and defense counsel raised the point in his closing argument. Entrapment need not be specially pleaded or relied upon exclusively so long as it has been clearly suggested in the trial court. Cf. *People* v. *Van Scoyk,* 20 Ill.2d 232; *People* v. *Outten,* 13 Ill.2d 21.

It is true that the defense of entrapment presupposes a criminal offense into which the defendant was enticed, and may be therefore inconsistent with a claim of total innocence. (*People* v. *Van Scoyk,* 20 Ill.2d 232.) However, in

the case at bar, defendant did not deny on trial that he delivered narcotics to Johnson, and he has further abandoned his contention that his knowledge of the contents of the package was not proved beyond a reasonable doubt. We think that the defense of entrapment must be considered.

The contention of defendant is that Reynolds, a special employee of the government, supplied him with the narcotics about 45 minutes before he brought Johnson to his room. There is no evidence to rebut this testimony. On the contrary, Johnson testified that he met Reynolds on the street approximately one half to three quarters of an hour before going to defendant's room, and further that Reynolds told defendant Johnson was "the cat I told you wanted to get the stuff today," inferring that Reynolds had recently talked to defendant. While Johnson was not in a position to contradict defendant on this issue, there is no question but that the government employee, or informer, Reynolds, could refute the testimony if false. While the State was not obligated to call Reynolds, (*People* v. *Aldridge,* 19 Ill.2d 176,) the unexplained failure to do so may give rise to an inference against the State. *Morei* v. *United States,* (6th cir.) 127 F.2d 827, 830.

From an examination of the record, and giving full credence to the testimony of the witnesses for the People, we think the undisputed testimony of defendant strongly tends to prove that defendant was supplied with the narcotics by Reynolds, the government employee. While we are sympathetic to the problems of enforcement agencies in controlling the narcotics traffic, and their use of informers to that end, we cannot condone the action of one acting for the government in supplying the very narcotics that gave rise to the alleged offense. We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than mere inducement. In reality the government is supplying the *sine qua non* of the offense.

We have also considered that although there is variation in the testimony as to the reason, there is no doubt that on September 30, 1958, and again on January 7, 1959, agent Johnson endeavored to purchase dope from the defendant without success. It is, we think, worthy of notice that the agent did not approach the defendant during a period of more than three months.

We do not mean to imply that agent Johnson either supplied the special employee Reynolds with narcotics or knew that Reynolds supplied the defendant. Nevertheless, the State must be responsible for the actions of their informer, Reynolds, when the defense of entrapment is raised.

We believe the record as a whole tends to show that defendant's only sale was of narcotics supplied to him by an informer in the employ of the government. This constitutes a valid defense of entrapment and the defendant should have been discharged.

Because of our view of the case it is unnecessary to consider the propriety of the People's instruction, objected to by defendant. The judgment of the criminal court of Cook County is therefore reversed.

*Judgment reversed.*