THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FAYE ODELL WATERS, Defendant-Appellant.

Second District    No. 75-332

Opinion filed November 23, 1976.—Modified opinion filed on rehearing May 16, 1977.

Ralph Ruebner, J. Daniel Stewart, and Mark Schuster, all of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko, Edward N. Morris, and Martin P. Moltz, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Following a bench trial defendant, Faye Odell Waters, was convicted of unlawful delivery of a controlled substance. He was sentenced by the circuit court of Kane County to a term of 3 to 9 years. The only point made by defendant on appeal is that he was entrapped into making the delivery by an informer who provided him with the controlled substance and that the State's failure to call the informer as a witness to controvert that part of his testimony relating to entrapment is fatal to its case.

Special Agent James testified for the State that on July 8, 1974, he was with Agent Kazman, Detective Weaver of the Aurora Police Department and a "cooperating individual," whom Agent James did not name but who was later identified by the defendant as Robert Hamblen. James testified that the "cooperating individual" drove him to 425 Avon Street in Aurora about 4:05 p.m. on July 8, 1974. They parked the car west of that address on the south side of the street, waited there a couple of moments and then observed a vehicle pull up to 425 Avon Street and park there. James saw a female and a male exit from the vehicle, with the female walking to the residence and the male walking over to the driver's side of the vehicle James was in. At this point, James said, the "cooperating individual" introduced the defendant to him and they had a conversation for about 20 minutes.

James testified that he asked Waters (the defendant) about purchasing a tableting machine Waters said he had made. The defendant, according to James, answered that the people he had sold the machine to did not want to sell it at the present time. The defendant went on to say that the machine put out a pretty good tablet and handed two white tablets to James. The defendant asked James to notice the glaze effect or hard finish on them, saying this was due to the fact that he had provided for a heat treatment in the machine. James said he kept the two pills that Waters had given to him and they continued to talk about the tableting machine.

James further said that Waters told him that the tablets had been produced on the machine which was presently being operated by some people he had sold it to in Joliet. Waters told him that these people had $13,000 invested in the machine, which was running 24 hours a day and producing 600 tablets an hour with the liquid amphetamine he was providing them for use in the machine. Waters told James he was getting the liquid amphetamine from a legitimate source, paying $36 a pint for it.

About 4:30 p.m., James said he and the "cooperating individual" left the

425 Avon Street address, drove to the east side of Aurora, and met with Agent Kazmar and Detective Weaver. James showed them the tablets, which he delivered to the Drug Enforcement Administration chemist's office in Chicago the following day. Richard Gelsomino, the chemist who examined the tablets Agent James had obtained from the defendant, testified that his tests on the tablets indicated they contained amphetamine.

Also testifying for the State at trial were DEA Agent Richard C. Kazmar and Aurora Police Detective Raymond A. Weaver, who were on surveillance and observed the meeting between the defendant and Agent James on July 8, 1974. Kazmar and Detective Weaver testified to the same sequence of events that James had testified to. On cross-examination, Kazmar testified that James told him he had gotten two tablets from Mr. Waters, but Kazmar did not know where Waters had obtained them.

After the testimony of the State witnesses, the defendant, Faye Odell Waters, testified in his own behalf. Mr. Waters admitted meeting with Agent James at 425 Avon Street in Aurora on July 8, 1974. Waters testified that as he and his wife pulled into his driveway, he saw a Continental he recognized as belonging to a friend of his, Robert Hamblen, Sr., whom he had known for about three years.

Mr. Waters said he walked back and talked to Bob Hamblen, who introduced him to Randolph James, the DEA agent who had testified in court. According to the defendant, Hamblen was talking about a machine, one that was in Joliet which the defendant knew nothing about, and asking whether they could make one. Defendant testified that Hamblen said to the defendant, "You are a machinist, you can offer him some money or get someone to and we will build one," the defendant said he was not a machinist, although he did do some machine work.

After that, the defendant continued, "Bob asked me if I had any of those pills left." When the defendant said he had a few of them left, Hamblen asked to see them. The defendant handed them to Hamblen, who, in turn, gave them to Agent James, who asked if he could keep them. The defendant answered, "Well, they are Bob's."

The defendant testified that the day before, on Sunday, July 7, 1974, he and Hamblen were at Denny's drive-in at New York and Lincoln Streets in Aurora in the early afternoon when Hamblen told him he had something for him and gave him some "white cross pills," including the same two pills that he gave back to him on July 8, 1974. The defendant put the pills in a cigarette package container and later put them into a clear prescription bottle without any label. At this meeting on Sunday, July 7, Hamblen said he was going to rush an order and seemed to be in a hurry. Hamblen also asked Waters where he lived because he had not seen him in a while. The defendant explained that he had gotten married

since he had last seen Hamblen. After the defendant told Hamblen his address, Hamblen said he might drop over and see him sometime, and the defendant told him to "come ahead."

On cross-examination, the defendant stated that he knew the pills he gave to Hamblen were amphetamines. The defendant also said that Hamblen had never before given him drugs or talked to him personally about drugs until the Sunday that he had given him the pills the defendant gave back to him the next day. Defendant testified that at the Sunday meeting, Hamblen gave the defendant 18 pills and said, "That will hold you until I can see you." The defendant indicated he understood what Hamblen meant by that because he had taken amphetamines before. When the defendant began to explain, "I used to drive on the road and —," Assistant State's Attorney Thompson asked another question before he finished his answer.

The defendant said that the agent had started the conversation about the machine, saying he had talked to Bob, who had told him that the defendant knew where there was one operating. The defendant stated he did not know of any machine operating in Joliet.

The defendant further testified that he was not paid for the pills he had given to Hamblen and Agent James. The defendant just handed the pills over to Hamblen because Hamblen had given them to him the day before.

After the defendant finished his testimony, the defense rested, and the State called Agent James in rebuttal. Agent James testified that his intent in the investigation was to attempt to locate the tableting machine. James said that when Waters told him that the machine was not available for sale, there was a discussion of him building a machine; but James wanted to see the machine in Joliet before asking Waters to build him another one. James further testified the defendant then said that he would be going to Joliet the following week and would pick up 1,000 tablets for him as a sample of what the machine could produce. Waters also said he would ask the people if either James or Hamblen could come down and see the machine. Waters said that the individual who helped him build the machine was a guy by the name of Curt whom he had bonded out of jail a few nights before to make sure Curt's parole officer did not find out he had been arrested. According to Agent James, Waters said he, Curt, and another unidentified individual had built the machine.

On cross-examination, Agent James said that the informant, Mr. Hamblen, had given him some "sketchy information" prior to July 8 concerning the tableting machine but most of the information Hamblen had learned the same time James learned it from Waters.

After hearing the closing arguments of counsel, in which defense counsel cited two cases, *People v. Carmichael* (1961), 80 Ill. App. 2d 293,

and *People v. Strong*, (1961), 21 Ill. 2d 320, the court found the defendant guilty, rejecting the defense of entrapment on the ground that the testimony of defendant was unbelievable.

In a previously written opinion, which we have now withdrawn,[1] we held that the State presented no evidence that the defendant was predisposed to commit the crime and that the State did not contradict the testimony of the defendant that the informer furnished the contraband and we therefore reversed the trial court.

The State petitioned for rehearing, contending that this court's opinion and decision herein were in error, since (1) the record demonstrates beyond a reasonable doubt that the defendant was predisposed to commit the offense, and (2) the question of whether the contraband was furnished by the informer is "totally irrelevant" in view of the Supreme Court's holding in *Hampton v. United States* (1976), 425 U.S. 484, 48 L. Ed. 2d 113, 96 S. Ct. 1646. We felt that a close and difficult question was presented by these arguments and by certain other aspects of the case, and therefore granted a rehearing. After consideration of arguments by counsel on rehearing and after a careful review of the record, we are convinced the now withdrawn opinion was in error and that the judgment of the trial court should be affirmed.

The focus of the withdrawn opinion was upon the allegedly uncontradicted testimony of the defendant that he received the tablets from Hamblen. In view of this testimony, we held that the State had failed to prove predisposition.

We are now convinced that the trial court was not obliged to accept the defendant's testimony. The trial court found that the testimony was "absolutely incredible", in view of the improbability that a person whom defendant had known for three years, without ever discussing narcotics, would "out of the clear blue sky" pass the defendant 18 pills. This improbability, standing alone, would not warrant the trial court in disregarding the defendant's testimony in view of the inference that was raised by the State's failure to call Hamblen as a witness. However, our earlier opinion neglected to give proper consideration and emphasis to Special Agent James' testimony, which was to the effect that the defendant handed him the two pills, indicating that they came from the pill machine that he had built. This statement to Agent James was in direct contradiction to the defendant's trial testimony that he got the pills from Hamblen. In view of this testimony, and in view of the

---

[1] Justice Walter M. Dixon authored the now withdrawn opinion and Justice Thomas J. Moran was a member of the panel and dissented. Prior to the filing of the petition for rehearing, Justice Dixon resigned from the court and Justice Moran was elected to the Illinois Supreme Court.

improbability of the defendant's story about receiving the pills from Hamblen, the trial judge was not obliged to accept the defendant's statement at trial that he got the pills from Hamblen, and we are now convinced that we erred in holding that the defendant's testimony was "uncontradicted."

Further, a careful re-examination of the record convinces us that there was sufficient evidence of predisposition to support the trial court's judgment. In the defendant's testimony about receiving the pills from Hamblen on July 7, 1974, there is no mention of any request by Hamblen for the defendant to give the pills to Agent James, or anyone else. Although the defendant testified that on July 8, the date of the alleged offense, Hamblen asked him for the pills, this testimony was contradicted by that of Agent James, who said that the defendant bragged about the quality of the pills which his machine manufactured, and then handed some samples to the agent. Thus, there was evidence that neither Hamblen nor James solicited the delivery of the pills, but rather, that the defendant spontaneously handed them over to James. His evident purpose in so doing was either to interest James in purchasing a pill machine, or sheer braggadocio over the properties of pills produced by the machine. It is obvious that neither of these motivations originated with the State. Thus, the record will support a finding that the defendant was predisposed to commit the offense of unlawful delivery of the controlled substance.

■■■ On appeal, a court of review should consider the evidence in its aspect most favorable to the party prevailing below, *e.g., Moehling v. Brickman* (1968), 98 Ill. App. 2d 156, and in a criminal case should not reverse a conviction unless the evidence is so improbable as to justify a reasonable doubt of the accused's guilt. (*People v. McDonald* (1975), 62 Ill. 2d 448, 456.) Here, although a close question is presented, there was sufficient evidence to justify the trial judge's finding that Hamblen did not supply the contraband pills, and that the defendant was predisposed to commit the offense. On this record, it would be error for us to substitute our judgment and impression for the findings of the trial court.

The State has argued that *People v. Strong* (1961), 21 Ill. 2d 320, which holds that entrapment is established as a matter of law when it is shown that an agent or informer of the State supplied the contraband, has been overruled by *Hampton v. United States* (1976), 425 U.S. 484, 48 L. Ed. 2d 113, 96 S. Ct. 1646. In view of our holding that the trial court was not bound to accept the defendant's testimony about receiving the pills from Hamblen, we need not reach this question.

In view of our findings herein, that portion of defendant's motion filed December 6, 1976, to release defendant on bond, and objections thereto, which was on March 18, 1977, ordered taken with the case, is denied.

We therefore affirm the judgment and sentence of the circuit court of Kane County.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.