THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ODIE CROSS, JR., Defendant-Appellant.

Fifth District    No. 77-179

Opinion filed July 28, 1978.

Michael J. Rosborough and Phillip A. Kramer, both of State Appellate
Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Keith P. Vanden Dooren, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Odie Cross, Jr., appeals from a judgment of conviction of the circuit court of St. Clair County entered on a jury verdict finding him guilty of the offense of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(b)). He was sentenced to a term of 2 to 6 years imprisonment.

On appeal defendant contends that (1) his testimony established the defense of entrapment as a matter of law, or alternatively it required that his entrapment instruction be given to the jury; and (2) that the trial court committed reversible error in admitting into evidence certain hearsay testimony.

The evidence is undisputed that on the evening of October 7, 1976, the defendant accompanied Henry Pickett, a lifelong friend, to Pickett's home in East St. Louis, Illinois to assist him in doing some home repair work. Upon arriving at Pickett's home at approximately 8 p.m., the pair was informed by Pickett's wife that someone had recently broken into the house. Suspecting his brother-in-law, Pickett and his wife decided to go to his brother-in-law's residence to discuss the incident with him. At the Picketts' request, the defendant remained alone in the house to await their return. It was shortly thereafter that the charged offense occurred.

Archie Luss, special agent with the Drug Enforcement Administration, appeared on behalf of the State. He testified that Henry Pickett was a confidential source used to introduce undercover agents to individuals who sold heroin. Luss stated that he had worked with Pickett on two occasions and that to his knowledge Pickett had not received compensation for his assistance at either time. According to Luss, he went to Pickett's home, together with special agent James McDowell, on the night in question seeking Pickett's assistance in locating Allen Jefferson, a man they sought to arrest, who had earlier been introduced to them by Pickett.

Upon arriving at Pickett's home, Luss left his automobile and went to the rear of the house where he knocked on the door. The knock was answered by the defendant who stated that Pickett was not at home and asked Luss if he could take care of any "business" for him. Luss testified that he told the defendant he did not know him and that he then returned to the car where McDowell had remained. After discussing the incident together, they recorded the serial numbers of two $10 bills which Luss took with him when he again returned to the house to speak with the defendant. When the defendant again answered the door Luss told him

that he wanted to "cap two buttons." The defendant then gave Luss two pink capsules in exchange for the two $10 bills. After returning to the car, Luss and McDowell performed a field test on the capsules which indicated the presence of alkaloids.

Luss and McDowell then summoned two additional agents to the scene and the group formulated a plan to make another purchase. Luss related that he subsequently returned to the Pickett house for the third time where he again spoke to the defendant asking him for five more "buttons." The defendant responded that he had only three and after Luss agreed to take them, he reached into his right sock, pulled out a plastic vial and removed three pink capsules. As the defendant handed them to Luss, he was placed under arrest. Thereafter Luss searched the defendant and recovered the previously recorded $10 bills. It was at this point that the defendant told Luss that he was selling the capsules, later confirmed by a laboratory test to have contained heroin, for Henry Pickett.

Luss and McDowell both testified that prior to the evening of October 7, 1976, they had neither seen nor heard of the defendant. They both stated that they had gone to Pickett's house that evening for information only and not with the intention of purchasing drugs from anyone. Luss related that he had no prior knowledge or information that the defendant was dealing in heroin. During cross-examination, Luss was asked whether Pickett had made any statements regarding the transaction when he returned home that evening. Luss responded in the affirmative and stated that he had asked Pickett if the heroin was his. Defense counsel then asked Luss if his exact words to Pickett had not in fact been "Are you trying to make a fool out of me?" Luss replied that they were not and that he did not recall asking that question. On redirect examination, Luss was asked what Pickett's response had been to the question of whether the heroin sold by the defendant had been Pickett's. Over defense counsel's hearsay objection, Luss stated that Pickett had replied that he had no knowledge of the defendant possessing heroin and he specifically denied having supplied the capsules to him.

The defendant testified that when Pickett and his wife left their house on the night in question he had given the defendant a plastic vial containing five capsules and that he asked him to keep it until he returned. The defendant stated that he took the vial from Pickett and placed it in his right sock. The defendant admitted that he knew the capsules were heroin, and he stated that the plastic vial given to him by Pickett was similar to those that he had seen in Pickett's possession in the past. According to the defendant, he was present in the house in the custody of the agents when Pickett returned. The defendant testified that he heard Luss ask Pickett whether he was trying to make a fool out of him, but he

stated that he was unable to hear Pickett's response because he was removed from the house at that point by other agents.

The informant, Henry Pickett, was not called to testify.

During the instruction conference, the defendant offered an instruction defining entrapment and another setting forth the issues for the offense of unlawful delivery of a controlled substance which recited that entrapment was one of the issues the State was required to prove did not exist beyond a reasonable doubt. Both instructions were refused, the trial court finding that the defendant had not sufficiently proved that the idea of committing the crime had originated with the law enforcement officials or that they had actively encouraged the defendant to commit the offense. Thereafter, the jury returned a verdict finding the defendant guilty of the offense as charged.

The affirmative defense of entrapment is defined by section 7—12 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 7—12) which provides:

> "A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated."

It is the defendant's primary contention that his uncontradicted testimony that the heroin he sold to Agent Luss had been supplied to him by the informant, Pickett, established the defense of entrapment as a matter of law. The State maintains that inasmuch as there was no evidence of trickery, persuasion or fraud on the part of the government, coupled with the apparent willingness the defendant exhibited to commit the crime, the defense of entrapment was not established by the defendant.

■■ It is clear that to establish the affirmative defense of entrapment the evidence must disclose improper inducement on the part of the government, and a lack of predisposition to commit the crime on the part of the defendant. (*People v. Gulley*, 36 Ill. App. 3d 577, 344 N.E.2d 567 (5th Dist. 1976); *People v. Cooper*, 17 Ill. App. 3d 934, 308 N.E.2d 815 (2d Dist. 1974).) It is also clear that if some evidence on the issue of entrapment is raised, the State must prove, beyond a reasonable doubt, that the defendant was not entrapped. (Ill. Rev. Stat. 1977, ch. 38, par. 3—2(b); *People v. Dollen*, 53 Ill. 2d 280, 290 N.E.2d 879 (1972).) The State argues that the testimony in this cause reveals that the defendant's criminal act was not the product of the "creative activity" of law enforcement officials; therefore, under the "subjective" or "origin of

intent" test discussed by this court in *People v. Gulley*, entrapment as a matter of law was not established.

■■■ In the instant cause, the defendant's testimony and confession was that he was supplied the heroin by Pickett only moments before he sold the drug to undercover agent Luss. While we agree with the State that there is no evidence that the agents or Pickett actually instigated the sale, it is nevertheless clear that a conviction for selling a controlled substance cannot be sustained if the substance is supplied by the government. (*People v. Strong*, 21 Ill. 2d 320, 325, 172 N.E.2d 765, 768 (1961); *People v. Spahr*, 56 Ill. App. 3d 434, 439, 371 N.E.2d 1261, 1265 (4th Dist. 1978).) Because Pickett was not called to testify, the defendant's testimony that Pickett supplied the heroin stood uncontradicted. The failure of the State to call Pickett to rebut the defendant's testimony, if it could be rebutted, raises a strong inference against the State (*People v. Strong; People v. Rogers*, 6 Ill. App. 3d 1092, 286 N.E.2d 365 (3d Dist. 1972)).

■■ The only evidence introduced to rebut the defendant's claim that he was supplied the drugs was the testimony of Agent Luss that during his discussion with Pickett after the defendant's arrest, Pickett denied having given the defendant any heroin and further denied any knowledge that the defendant possessed the drug. The defendant complains that the court erred in allowing this testimony over defendant's hearsay objection. We agree.

Luss' testimony concerned an alleged out-of-court statement made by Pickett. It is apparent that it was offered by the State to show the truth of the matter asserted—that Pickett did not give the defendant the heroin in question—and its validity rested upon the credibility of the out-of-court asserter, Pickett. At trial the State argued successfully that this testimony was admissible because it was a conversation gone into by defense counsel, and it took place in the presence of the defendant. Defense counsel never asked Luss what, if any, statements Pickett had made to him; rather, Luss was only asked what he had said to Pickett in an apparent attempt to impeach Luss with a prior inconsistent statement. Moreover, there was no showing that the defendant was present when the alleged statement was made. The admission of this hearsay testimony by Luss was tantamount to testimony by Pickett that he had not supplied the heroin to the defendant. Thus, the State improperly attempted to rebut the defendant's testimony without calling Pickett, who could be cross-examined on the matter, to testify.

■■ We are mindful that there is not evidence of affirmative action or material collaboration on the part of Pickett and the undercover agents, as was true in *Strong, Dollen,* and *Spahr* where the defense of entrapment was upheld. We also note that there was no evidence that Pickett was "on

duty" at the time he allegedly supplied heroin to the defendant. Nevertheless, we are constrained to comply with the rule established in *Strong* and followed by this court in our recent decision in *People v. Haywood*, 63 Ill. App. 3d 352, that where the evidence is unrefuted that the State supplied the *sine qua non* of the offense, entrapment is established as a matter of law and the defendant's conviction must be reversed.

For the foregoing reasons, the judgment of conviction of the circuit court of St. Clair County is reversed.

Reversed.

JONES and G. J. MORAN, JJ., concur.