(No. 51201.—

(No. 51230.—

(No. 51256.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. ODIE CROSS, JR., Appellee.—THE PEOPLE OF
THE STATE OF ILLINOIS, Appellant, v. TOM
HAYWOOD, Appellee.—THE PEOPLE OF THE
STATE OF ILLINOIS, Appellant, v. ROBERT
THOMAS, Appellee.

*Opinion filed October 19, 1979.—Modified on
denial of rehearing November 30, 1979.*

William J. Scott, Attorney General, of Springfield, and Clyde L. Kuehn, State's Attorney, of Belleville (Donald B. Mackay, Melbourne A. Noel, Jr., and Gerri Papushkewych, Assistant Attorneys General, and Keith P. Vanden Dooren, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

John H. Reid, Deputy Defender, and Robert E. Davison, of the Office of the State Appellate Defender, of Springfield, for appellee.

William J. Scott, Attorney General, of Springfield, and Clyde L. Kuehn, State's Attorney, of Belleville (Donald B. Mackay, Melbourne A. Noel, Jr., and Gerri Papushkewych, Assistant Attorneys General, and Raymond F. Buckley, Jr., and Ann E. Singleton, of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

John H. Reid, Deputy Defender, and Robert E. Davison, of the Office of the State Appellate Defender, of Springfield, for appellee.

William J. Scott, Attorney General, of Springfield, and Clyde L. Kuehn, State's Attorney, of Belleville (Donald B. Mackay, Melbourne A. Noel, Jr., and Gerri Papushkewych, Assistant Attorneys General, and Raymond F. Buckley, Jr., and Ann E. Singleton, of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

Marc M. Barnett, Marvin J. Glass, Dennis A. Berkson, and Charles K. Piet, of Barnett, Ettiger, Glass, Berkson & Braverman, Ltd., of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

The primary issue raised in these three consolidated cases is whether the appellate court properly held that entrapment exists as a matter of law whenever a government informer supplies a controlled substance to an individual who is later prosecuted for the sale of that substance. Defendant Odie Cross, Jr., was convicted in a jury trial of the unlawful delivery of less than 30 grams of a substance containing heroin (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(b)) and was sentenced to a term of imprisonment of two to six years, defendant Tom Haywood was convicted in a bench trial of the unlawful delivery of 30 grams or more of a substance containing lysergic acid diethylamide (LSD) (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(a)(8)) and was sentenced to a term of imprisonment of four years to four years and one day, and defendant Robert Thomas pleaded guilty to a charge of unlawful delivery of 30 grams or more of LSD (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(a)(8)) and was sentenced to a term of imprisonment of four to six years. All

proceedings took place in the circuit court of St. Clair County. The appellate court reversed the convictions of defendants Cross (63 Ill. App. 3d 628), Haywood (63 Ill. App. 3d 352), and Thomas (61 Ill. App. 3d 1112 (Rule 23 order)) because of its findings of entrapment, and we allowed the State's petition for leave to appeal in each case.

Although the facts in these cases differ in most respects, they each involve the prosecution of an individual who claims to have been supplied with a controlled substance by a government informer and who, after selling the substance, was arrested. Defendant Thomas failed to raise this entrapment issue in his motion to withdraw his guilty plea, however, referring only to a deprivation "of a crucial defense." The argument is waived. (58 Ill. 2d R. 604(d).) Our discussion of entrapment is therefore limited to defendants Cross and Haywood. They raised the defense of entrapment in the circuit court, and it therefore became incumbent upon the State to prove beyond a reasonable doubt that entrapment did not occur (*People v. Dollen* (1972), 53 Ill. 2d 280, 284). In attempting to meet this requirement, the State offered evidence of the defendants' predisposition to commit the offense.

In reversing the judgments of conviction, the appellate court interpreted this court's decisions in *Dollen* and *People v. Strong* (1961), 21 Ill. 2d 320, as establishing a *per se* rule of entrapment whenever a government informer supplies a controlled substance to an individual who is later prosecuted for the unlawful delivery thereof. Although this application of the *Dollen* and *Strong* opinions may well be justified in light of language contained therein, we do not believe that the court in *Strong* intended to create a *per se* rule, and the language in *Dollen* so interpreting *Strong* is in error.

In *Strong*, the court approved of the entrapment defense in a prosecution for unlawful possession and sale

of heroin where the defendant's "only sale was of narcotics supplied to him by an informer in the employ of the government." *(People v. Strong* (1961), 21 Ill. 2d 320, 326.) Implicit in this holding was a finding that the defendant was not predisposed to commit the offense. It there appeared from the evidence that the drug sale in question was the defendant's sole experience with the unlawful distribution of heroin:

> "The defendant testified that the informer, Reynolds, brought a package to his room and left it there without explaining what it contained, saying that he would return in about 45 minutes. Reynolds did return in that time accompanied by [Federal agent] Johnson. Reynolds asked the defendant to give the package to Johnson, which he did, whereupon Johnson gave the defendant $50. The defendant said that the money should go to Reynolds but Reynolds asked the defendant to keep the money and bring it to him that evening. He testified that he took the money to Reynolds later that day. The defendant testified that he did not knowingly sell agent Johnson any narcotics because he was not in the business, did not have any narcotics, did not know where to obtain any and had nothing to do with narcotics." (21 Ill. 2d 320, 323.)

In reaching its decision, however, the court said:

> "While we are sympathetic to the problems of enforcement agencies in controlling the narcotics traffic, and their use of informers to that end, we cannot condone the action of one acting for the government in supplying the very narcotics that gave rise to the alleged offense. We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than

mere inducement. In reality the government is supplying the *sine qua non* of the offense." 21 Ill. 2d 320, 325.

*Dollen,* too, is somewhat ambiguous because it interprets *Strong* as espousing a *per se* rule of entrapment, yet at the same time the court's opinion inquires deeply into the question of whether the defendant was predisposed to commit the offense. The court says in one passage, "In *Strong,* we held that a conviction for the unlawful sale of narcotics cannot stand when the informer supplies the drugs." (53 Ill. 2d 280, 284.) Shortly thereafter, however, the court states:

> "In the present case the testimony of defendant and Elmer Davis clearly indicates that defendant [a taxi dispatcher] innocently gained possession of the narcotics during a routine inspection of the vehicle driven by [informer] Wright. Defendant apparently had no prior history of narcotics involvement until this time. Wright, who immediately after the discovery suggested that he could find a buyer, also possessed an unparalleled opportunity to place the package in his vehicle. Moreover, the testimony of agent Norton and defendant confirms that Wright actively negotiated the price of the narcotics. It was also definitely established that at the approximate time of the discovery of the drugs Wright harbored resentment against the defendant." (53 Ill. 2d 280, 284.)

Evident from the latter passage is the court's concern that an innocent man had been convicted, thus casting doubt on its discussion of *Strong.*

The problem of interpreting *Strong* and *Dollen* has also caused the appellate court some difficulty, resulting in a split of authority on the question of whether a *per se* rule governs. (Compare *People v. Cross* (1978), 63 Ill. App.

3d 628, 632, *People v. Haywood* (1978), 63 Ill. App. 3d 352, 353, *People v. Thomas* (1978), 61 Ill. App. 3d 1112 (Rule 23 order), and *People v. Spahr* (1978), 56 Ill. App. 3d 434, 439, with *People v. Arbogast* (1976), 41 Ill. App. 3d 187, 190, *People v. Hesler* (1976), 39 Ill. App. 3d 843, 850, and *People v. Hatch* (1964), 49 Ill. App. 2d 177, 184.) This confusion has led us to consider the subject anew.

In our reconsideration of the subject and in light of the ever-growing drug problem, we are not so sure that the court should be so critical, as it was in *Strong*, of governmental action in infiltrating drug rings, and we do not believe that the courts should foreclose the possibility that a conviction of a predisposed individual could be sustained even though the government did furnish the controlled substance. The offense in question here is the unlawful delivery of a controlled substance and, although the government may have supplied the substance, the critical inquiry is whether the "criminal purpose" of *selling* these substances originated with the defendants (Ill. Rev. Stat. 1975, ch. 38, par. 7—12). By supplying an individual with controlled substances, the government is merely facilitating or providing the opportunity for the individual to make an unlawful delivery. This is not entrapment under our entrapment statute (Ill. Rev. Stat. 1975, ch. 38, par. 7—12). Any contrary statement in *Strong*, decided before enactment of the statute, should no longer be followed.

The entrapment statute, based in large part on the leading case of *Sorrells v. United States* (1932), 287 U.S. 435, 77 L. Ed. 413, 53 S. Ct. 210 (see Ill. Ann. Stat., ch. 38, par. 7—12, Committee Comments, at 439 (Smith-Hurd 1972)), provides:

> "A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for

the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated." (Ill. Rev. Stat. 1975, ch. 38, par. 7—12.)

It thus contemplates consideration of whether the idea for the crime originated with the defendant; predisposition as well as governmental involvement must therefore be considered. (See *Hampton v. United States* (1976), 425 U.S. 484, 48 L. Ed. 2d 113, 96 S. Ct. 1646; *United States v. Russell* (1973), 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637; *People v. Hatch* (1964), 49 Ill. App. 2d 177, 183-85.) The language in *Dollen,* which interprets *Strong* as eliminating the need to consider predisposition, likewise should no longer be followed. Consideration of an individual's predisposition is required, and, for that purpose, a complete review of the facts of Cross' and Haywood's cases is necessary. Because we believe that the State proved beyond a reasonable doubt that Cross and Haywood were predisposed to commit the offense of unlawful delivery of a controlled substance, we reverse the judgments of the appellate court in their cases.

On October 7, 1976, defendant Cross was alone in the East St. Louis home of Henry Pickett, a friend and government informer. Cross testified that he had gone there with Pickett to help him with some work. Pickett and his wife had left temporarily, and Pickett had asked Cross to hold a plastic vial containing five capsules until he returned. Cross testified that he knew that the capsules contained heroin. He further testified that he had seen Pickett every day in the preceding year and had been in his home to perform home repair and decoration services.

While in Pickett's home, Cross responded to the knock of a special agent of the Drug Enforcement Administration, Archie Luss, who was looking for Pickett to assist in finding an individual. According to Luss, Cross said that

Pickett was not home and Cross asked if he could take care of any business for Luss. Luss testified that "business," in his mind, meant a heroin sale. Luss also testified that he had not told Pickett that he was coming and that he did not know Cross and did not expect to meet him.

Luss returned to his car, where agent James McDowell was waiting, and the two then and there conceived of a plan whereby they would record the serial numbers of two of McDowell's $10 bills and offer them to Cross in exchange for heroin. Luss and McDowell did not anticipate a sale and did not have official funds to use. Luss, in fact, testified that no sale would have occurred if they had not gone looking for Pickett and if they had not had some money of their own.

Luss returned to Pickett's home and, according to Cross, said, "I want to cop two buttons." Cross testified that he knew that "buttons" meant heroin. Cross then produced two pink capsules from a vial in his right pants leg, which he then exchanged for the $20. According to Cross' testimony, $10 per capsule was charged because that was Pickett's usual rate. Following the sale, the agents performed a field test on the pills and detected opium alkaloids.

After conducting the test, Luss again returned to ask Cross for five more buttons. Although Cross later testified that he would have sold five if he had had that many, he responded that he only had three. Upon handing them to Luss, he was arrested. Luss testified that, following the arrest, Cross said that he was selling buttons for Pickett.

The State did not call Pickett to rebut Cross' claim that Pickett had given him the heroin, and, under *Strong,* this gives rise to an inference against the State (21 Ill. 2d 320, 325). Under the circumstances, however, little significance should attach to this fact because the sale here in question is not at all similar to the "set up" which was involved in *Strong* and which led the court to announce

that an inference would arise against the State for its failure to call the informer. The evidence clearly indicated Cross' predisposition to commit the offense, and the government's involvement in the sale was prompted only by Cross' offer to do business. The jury's verdict and the circuit court's judgment of conviction entered thereon are amply supported by the evidence.

Cross contends, however, that his conviction should nonetheless be reversed because the circuit court refused to instruct the jury on entrapment. The circuit court specifically held that defendant had not met the qualifications for the defense of entrapment, and it therefore refused the tendered instruction. We find no error in the ruling. The State's evidence established beyond a reasonable doubt that Cross was predisposed to commit the offense and that the idea for the sale originated with him. *People v. Cash* (1963), 26 Ill. 2d 595, 597-98; *People v. Guagliata* (1936), 362 Ill. 427, 433.

The evidence against defendant Tom Haywood is, we believe, also sufficient to sustain the circuit court's finding of guilt. Haywood was charged by indictment with the unlawful delivery of 50 grams of LSD on October 9, 1973, and the State's evidence supported the allegation that the sale occurred on the date specified. On that day, according to the testimony of Illinois Bureau of Investigation (IBI) agent Lonnie Inlow, Haywood sold Inlow 1,000 tablets of LSD for $725. Inlow arranged the sale with the assistance of an informer, Don Zierenberg.

Defendant's wife, Pamela, and a friend, Frank Herron, testified that Zierenberg supplied the LSD in question. Herron further testified that Zierenberg asked defendant to act as a source in making the sale. Mrs. Haywood testified, however, that the sale to which they were referring occurred in May of 1973, and Herron testified that it took place in the early summer of 1973.

In rebuttal for the State, agent Inlow testified that he

made only one purchase from defendant prior to October 9, 1973, that being on March 15, 1973. This was corroborated by IBI expenditure records identified by IBI assistant administrator Russell Ford.

As to defendant's claim that Zierenberg supplied the LSD, Inlow testified that he did not know if this was so, but he also testified that Zierenberg once had admitted selling drugs. Zierenberg was not called to testify.

Once the entrapment defense was raised, the State introduced evidence of defendant's predisposition to commit the offense. Agent Inlow in particular spoke of defendant's familiarity with drugs. He testified that, in the course of the March 15, 1973, sale, defendant indicated that the LSD was Berkeley (California) brown acid. At the October 9, 1973, sale, defendant is said to have represented that the LSD then sold was "as good in quality as good purple haze and it wasn't cut with strychnine which makes it a lot better." Inlow also testified that defendant expressed a desire to get good dope into the Belleville area and that defendant offered a price break for regular, large quantity sales. Defendant's wife also testified that defendant used LSD and marijuana, although she also said that he had not been using these substances recently and did not sell them.

Notwithstanding discrepancies in the testimony of State and defense witnesses as to whether the sale occurred in May or October of 1973, defendant contends that the defense of entrapment was raised and that the State failed to prove beyond a reasonable doubt that entrapment did not exist. While we agree that the defense was raised, we do not agree that the State failed to meet its burden of proof. The circuit court, sitting without a jury, weighed the evidence and drew inferences therefrom; it considered the credibility of the witnesses and found against defendant. The circuit court's judgment is well supported by the evidence, and we will not disturb that judgment since no

reasonable doubt clearly manifests itself. *People v. Fleming* (1971), 50 Ill. 2d 141, 145-46; *People v. Guido* (1962), 25 Ill. 2d 204, 208.

Defendant Haywood, however, correctly argues that he is entitled to be resentenced. He points out, with support in the record, that the circuit court was under the misapprehension that it was prohibited from imposing a term of periodic imprisonment and that it felt compelled to impose a 4-year minimum sentence. The circuit court apparently acted in reliance on the 1975 version of the sentencing provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—3(d)(1), which had been recently amended to exclude periodic imprisonment as an available form of punishment for the offense committed by Haywood, a violation of section 401(a) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(a)). The sentencing law in effect on the date on which Haywood committed the offense, October 9, 1973, did provide for the option of periodic imprisonment (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—5—3(d)(1), (d)(2)), and Haywood is entitled to the application of that law (Ill. Rev. Stat. 1975, ch. 131, par. 4).

Although we have ruled that defendant Thomas has not preserved his entrapment argument for review, other issues concerning the validity of his guilty plea are raised in his appeal which do require consideration. The offense to which defendant Thomas pleaded guilty was the unlawful delivery of 40.1 grams of LSD on April 24, 1973, one of three charges for which he was indicted.

Following arraignment on October 13, 1974, the circuit court stayed proceedings pending a decision in *People v. Mayberry* (1976), 63 Ill. 2d 1, involving a challenge to the sentencing provisions applicable to defendant Thomas. The case eventually was set for trial on May 12, 1976, at 9 a.m. Defendant was late and at 10:30 the court again called the case with defendant then

present.

At the outset of the proceedings, defendant said that he was not sure of the nature of the charges, but questioning by the court revealed that he was cognizant of the indictments and their contents. Defendant also stated that he did not consult his attorney in detail about the upcoming trial and that he had trouble understanding the attorney. He did later state, however, that he had met with the attorney on the previous day for an hour or an hour and a half, discussing the charges and possible pleas.

Defendant then indicated that he was ready for trial, but not that day. Defense counsel also expressed his readiness for trial, but expressed his belief that defendant was not. The court therefore granted defendant "a few days" to confer with counsel and to prepare for trial, but specified that trial would in no event be postponed more than five days. The court also ordered bond revoked pending trial, citing defendant's failure to timely appear. The court then ordered a 15-minute recess, during which time defendant was to decide which day trial would commence.

At this point defendant asked the court if he could have time to obtain different representation. His attorney admitted that he was experiencing difficulty counseling defendant, but the court denied any further continuance for the purpose of substituting attorneys.

During the recess which followed, defendant decided to enter a guilty plea, and an agreement was negotiated whereby defendant would plead guilty to one of the three charges, and the State would dismiss remaining charges and recommend a four- to six-year term of imprisonment. When the case was again called, the court ordered bond reinstated, and it began questioning defendant about his decision to plead guilty.

The court first asked if defendant had discussed the

case with his attorney, and he indicated that he had. The court then asked him if he wanted more time to consider his decision, and he indicated that he did not. When asked if he was satisified with his attorney, he responded affirmatively.

The court then questioned defendant about his awareness of the nature of the charges, potential sentences, and parole. The court also enumerated the rights waived by pleading guilty and asked, "[A]re you willing to give up each and every one of those rights to enter this plea?" After consulting with his attorney, defendant replied, "Yes." The court finally assured itself that the plea was not the product of threats or promises, excepting those promises contained in the plea agreement.

The prosecutor then read a statement of the exact charges into the record for the purpose of supplying a factual basis for the plea:

"Your Honor, on April 23rd, 1973, Agent Inlow approached the mobile home of Mr. Thomas, entered the mobile home of Mr. Thomas, [and] at that time Agent Inlow inquired of Mr. Thomas if he had any LSD for sale. Mr. Thomas responded in the affirmative. Mr. Thomas walked into the kitchen area, reached into the top of a refrigerator, removed a quantity of light, yellow powder, indicated to the Agent that this was lemon [mesc] for sale, received $70.00 and then delivered to Agent Inlow the powder. The Agent then took the powder, had it analyzed, and the analysis indicated that it was 40.1 grams of Lyseric Acid Diethylamide, commonly referred to as LSD."

The judge asked defendant if he sold the LSD as alleged, and defendant answered "I did, and I was given it by the person who was there with [IBI agent] Inlow ***." The court then accepted the plea.

Defendant's first challenge to the validity of the plea is that a factual basis was lacking. (See 58 Ill. 2d R.

402(c).) He contends that the defense of entrapment was raised by telling the judge that someone with the undercover agent had supplied the LSD. As a consequence, he argues, a factual basis was lacking or, at least, the circuit court should have inquired further into the possibility that entrapment had occurred. We disagree on both points.

Our initial problem in accepting the position of defendant is that his statement at the plea proceedings was made in passing, added only after he admitted committing the offense as charged. Whether the circuit court recognized this statement as a claim of entrapment we do not know, and we could not find fault with the court if it did not.

Even assuming that the court was properly apprised of the possibility of entrapment, the record before the court clearly indicated that defendant was predisposed to commit the offense, therefore making any further inquiry into entrapment unnecessary. In addition to the statement of facts supplied by the prosecutor, the court also had before it the IBI reports pertaining to the offense, as well as the other two indictments for the unlawful delivery of 195.4 and 503.3 grams of LSD. The IBI reports were especially indicative of predisposition, showing defendant's familiarity with drug terminology and paraphernalia and his expressed desire to do business in the future with IBI agent Inlow.

The circuit court's duty was to assure itself that a factual basis for the plea existed, not whether defendant was proved guilty beyond a reasonable doubt, and we do not believe that the possibility of the defense of entrapment rendered the guilty plea defective. Defendant was represented by counsel, and the plea was fully explained. (See *People v. Covington* (1970), 45 Ill. 2d 105, 110; see also *People v. Garrett* (1977), 46 Ill. App. 3d 592, 594-97;

*People v. Terry* (1975), 30 Ill. App. 3d 713, 714-16; *People v. Williams* (1975), 26 Ill. App. 3d 41, 43; *People v. Arnold* (1974), 18 Ill. App. 3d 95, 98.) We do not agree that the circuit court was required to do more.

Defendant Thomas' final contention, which the appellate court found unnecessary to address, is that his plea was improperly induced by the circuit court's decisions to revoke bond and to deny substitution of attorneys. Because we believe that the court's rulings were within its discretion, we find no merit to defendant's argument. As to the circuit court's bond revocation order, defendant's tardy appearance on May 12, 1976, justified the action. As to the court's refusal to allow substitution of attorneys, the court reasonably could and, in fact, did find that defendant was engaging in dilatory tactics. Significant in this respect is the fact that defendant had ample time, more than three years, between the alleged sale and the date set for trial, May 12, 1976, in which to prepare. Also important is that defendant had met with counsel the previous day, and, when entering his plea, expressed satisfaction with the attorney. We find no ground for reversal in this argument. *Cf. People v. Bratu* (1970), 46 Ill. 2d 143, 146 (reversal not required despite the defendant's claim that counsel coerced his guilty plea where evidence showed only that the attorney properly advised the defendant of the likelihood of conviction and the gravity of potential sentences); *People v. Pratt* (1970), 46 Ill. 2d 99, 103-04 (reversal not required despite the defendant's claim of inadequate representation where a guilty plea represented an intelligent choice among alternatives and no prejudice was shown).

The appellate court's judgments are reversed and the circuit court's judgments are affirmed, except that the sentence of defendant Haywood is vacated and that cause

is remanded to the circuit court for reconsideration of the sentence.

> *51201 — Appellate court reversed;*
> *circuit court affirmed.*
> *51230 — Appellate court reversed;*
> *circuit court affirmed*
> *in part and vacated in*
> *part; cause remanded.*
> *51256 — Appellate court reversed;*
> *circuit court affirmed.*