THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DENNIS JOSE CHANATH, Defendant-Appellant.

First District (2nd Division)   No. 1—87—2615

Opinion filed May 30, 1989.

Clarence L. Burch and David Delgado, both of Burch & Delgado, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Paula Carstensen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a jury trial, defendant was convicted of delivery of a controlled substance and sentenced to seven years' imprisonment. He appeals, arguing that the State failed to establish that his involvement in the offense was not the result of entrapment and that the trial court erred in admitting into evidence the opinion testimony of Chicago police officer William Haley.

At trial, Haley testified that he was working as an undercover agent on February 13, 1986, when he first met defendant at the apartment of Denise Murray, defendant's girl friend. Haley had received information from an unidentified informant that defendant was "dealing narcotics" and that defendant's people could supply large quantities of cocaine. Haley, who was using the name Mark, made arrangements for future purchases and, although the record is unclear, it appears that he made a narcotics purchase on that date as well. According to Haley, defendant and he talked about the price of cocaine, the quantity, what defendant could get "fronted," and defendant stated that it was his people who would supply the cocaine. Defendant and Murray argued over whom Haley should contact for purchases, and Haley resolved the dispute by saying that he did not care who supplied him, that he would leave a message with his number on Murray's answering machine and either defendant or Murray could call him.

Haley stated that on February 28, 1986, at approximately 2 p.m., he received a page via his pager service. He called the telephone number which appeared on his pager and spoke with defendant, who asked him if he was still interested in purchasing five ounces of cocaine. Haley responded affirmatively, and defendant replied that he had only four ounces but if Haley waited another hour, defendant would be able to supply him with a total of five ounces at $1,550 per ounce. Haley told defendant that he would not have the money until approximately 3:15 p.m. and to call back then. In response to defendant's page, Haley called him and arranged to meet him at a restaurant. Haley delayed his arrival at the restaurant, in order to give the surveillance team time to position themselves, and while he was driving there, defendant paged him twice, urging Haley to get there as soon as possible.

When Haley finally arrived at the restaurant, he found defendant eating at a table. Haley testified that defendant advised him that the cocaine had come "off a kilo block," which, according to Haley, is a slang term "used normally among high, middle level to upper level narcotics suppliers" to describe a very high grade block of cocaine. After defendant finished eating they went to Haley's car. Defendant gave Haley a large plastic bag containing four ounces of "a white rocky powdery substance," and Haley gave defendant $6,200. As defendant was counting the cash, members of the surveillance team approached the car and arrested defendant.

Defendant testified that following his graduation from high school he joined the Navy, from which he was honorably discharged, and at the time of his arrest and trial he was a student at DeVry Institute of Technology. He first met Haley at Murray's apartment, where he was doing his homework. Murray and Haley left the apartment to engage in a narcotics transaction, and defendant accompanied them. He denied having a drug-related conversation with Haley.

Defendant next had contact with Haley on February 28, 1986, when Haley called him, seeking to purchase cocaine. Defendant was angry that Haley had called him and told him he could not supply him with cocaine. He repeated this when Haley called a second time, but, when Haley called later and begged defendant to sell him cocaine, defendant agreed to meet him at a restaurant. Upon being arrested, defendant told the police that he was not a dealer and that he was making only $300 profit on the sale.

Defendant was convicted of delivery of a controlled substance, and he now appeals.

OPINION

Defendant argues that the State failed to show that he was predisposed to sell or deliver cocaine and that his involvement in the sale was not the result of entrapment. Thus, his argument continues, his conviction must be reversed. Defendant maintains that it is clear from the evidence that Haley induced him to commit the offense, emphasizing his testimony that Haley contacted him and that he was honorably discharged from the Navy, was a student and had no criminal background.

■ The defense of entrapment is provided for in section 7—12 of the Criminal Code of 1961:

"A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated." (Ill. Rev. Stat. 1985, ch. 38, par. 7—12.)

Once defendant presented some evidence in support of his contention that there was an entrapment, the State had to prove that defendant was not entrapped. (*People v. Fisher* (1979), 74 Ill. App. 3d 330, 333, 392 N.E.2d 975.) A three-part test is employed to determine whether an entrapment has occurred:

"(1) [T]he idea of committing the offense must originate not with the suspect but rather with the enforcement authorities; (2) the enforcement authorities must actively encourage the suspect to commit the offense; and (3) the purpose of the encouragement must be to obtain evidence for the prosecution of the suspect. The first part of the test involves two inquiries: [f]irst, does the suspect originate the idea of committing the offense; and second, is the suspect engaged in a course of conduct involving similar offenses, or other acts of the same offense if dealing with other persons." *Fisher*, 74 Ill. App. 3d at 333-34.

Defendant relies on *Fisher* in support of his argument that he was entrapped. In that case, defendant was convicted of the unlawful delivery of a substance represented to be a controlled substance. The appellate court reversed her conviction, holding that the State's evidence was insufficient to rebut defendant's entrapment defense, stating:

"From the testimony of both witnesses it is apparent that on

several occasions both prior and subsequent to the sale of the amphetamines [the police agent] had attempted to purchase drugs from the defendant. On each of these occasions he was unsuccessful. We believe his failure to obtain drugs from Fisher on these occasions was due not to an inability on the part of an otherwise willing and criminally predisposed defendant to procure the drugs sought, but was due rather to the natural disinclination of an innocent person to engage in criminal conduct." (74 Ill. App. at 334.)

The court also noted that, "It is highly improbable that an individual, with no prior record of drug offenses, would voluntarily and unreluctantly engage in criminal conduct unless that person has been induced to violate the law." 74 Ill. App. 3d at 335.

The State contends that the evidence presented at trial established beyond a reasonable doubt that defendant was predisposed to commit the offense and that the idea for the sale originated with him. It relies on Haley's testimony that defendant contacted him and arranged their meeting at the restaurant, as well as his testimony that defendant argued with Murray over which one of them would contact Haley in the future. The State also relies on *People v. Boalbey* (1986), 143 Ill. App. 3d 362, 493 N.E.2d 369, and *People v. Cross* (1979), 77 Ill. 2d 396, 396 N.E.2d 812, in support of its position.

In *Boalbey*, the appellate court reversed Boalbey's conviction for the unauthorized use of food stamps, concluding from the evidence that entrapment was established as a matter of law. The court stated:

> "In so holding we are not choosing between conflicting witnesses or judging credibility. The evidence is simply insufficient to support a finding of predisposition on the part of the defendant.
>
> It is clear the defendant was induced by [police officer] Dale. Without basis for suspecting the defendant, Dale suggested committing the crime, provided the necessary stamps, and agreed to sell them to defendant for a price seven times below their cash value. Dale initiated both the conversations and the negotiations. Defendant testified he had never in any capacity accepted food stamps before and Dale testified neither he nor the police department had any evidence of any kind that defendant was a suspect in this case or had a prior history of purchasing food stamps." (*Boalbey*, 143 Ill. App. 3d at 365.)

The State distinguishes the instant case from *Boalbey*, contending that here there is sufficient evidence to support a finding of predis-

position. The State also notes that the testimony in this case was conflicting and maintains that it was for the jury to weigh the credibility of both Haley and defendant.

In *Cross*, a consolidated case, the court affirmed Cross' conviction, holding that the State's evidence established beyond a reasonable doubt that Cross was predisposed to commit the offense of unlawful delivery of heroin and that the idea for the sale originated with him. While at a friend's home, Cross responded to the knock of an undercover agent, who was looking for the owner of the home. The friend had gone out earlier and left a plastic vial containing capsules, which Cross knew to be heroin, with Cross. Cross informed the agent that his friend was not home, and then asked if he, Cross, could "take care of any business" for the agent. Cross then sold the agent the capsules of heroin. (*Cross*, 77 Ill. 2d at 405-07.) Also in *Cross*, the court affirmed Haywood's conviction for unlawful delivery of LSD, holding that the State proved that entrapment did not exist, noting in particular defendant's familiarity with drugs. 77 Ill. 2d at 407-08.

■ Haley's testimony, if believed, established that defendant was familiar with drugs, that he was predisposed to sell cocaine and that he intended the sale. The jury heard the conflicting testimony as to who initiated the contact and believed Haley; their verdict is supported by the evidence and must be affirmed.

Defendant next argues that the trial court erred in allowing Haley to testify that telephone pagers are commonly used by drug dealers; that mid- and high-level drug dealers use certain slang terms and have certain characteristics; that defendant was a mid-level drug dealer; and that four ounces of cocaine has a street value of $1,800 to $2,500 per ounce. Defendant maintains that this opinion testimony was improper, because the State did not establish that Haley was an expert. Defendant cites *People v. Owens* (1987), 155 Ill. App. 3d 990, 508 N.E.2d 1088, in which case the appellate court held that it was error to admit a police officer's testimony concerning blood-spatter analysis, because there was no evidence demonstrating "the reliability of the spatter characteristics of human blood in determining the position of a decedent when shot." 155 Ill. App. 3d at 998.

■ The State responds that Haley testified that he has been a police officer for over 14 years and a narcotics agent for approximately 10 years; that he has been involved in over 300 narcotics arrests and in over 100 narcotics purchases; and that he is a group supervisor, monitoring narcotics cases for the Northeastern Metropolitan Enforcement Group, a narcotics enforcement agency.

Thus, he has experience and knowledge not common to lay persons and was properly qualified as an expert.

The trial judge ruled that Haley was qualified as an expert, and this decision is subject to reversal only if it constitutes an abuse of discretion. (*People v. Knight* (1985), 133 Ill. App. 3d 248, 478 N.E.2d 1082.) Since there was testimony that Haley had extensive experience in narcotics cases, his qualification as an expert was not such an abuse.

■ Finally, defendant asserts that it was error to allow Haley to testify that his informant told him that defendant was "dealing narcotics and could supply large quantities of cocaine," because that statement was inadmissible hearsay. However, Haley's statement was in response to defense counsel's question, "[W]as the purpose of your undercover work to purchase a quantity of cocaine from a known drug dealer?" The State correctly contends that where defense counsel elicits hearsay testimony, defendant waives for review the claim that such testimony was hearsay and therefore inadmissible. (*People v. Tribett* (1977), 54 Ill. App. 3d 777, 370 N.E.2d 115.) Moreover, there was no objection to such hearsay statement at trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed. Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, and *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, a fee of $75 is granted to the State, for the costs of defending this appeal.

Affirmed.

HARTMAN and EGAN,* JJ., concur.

---

*Justice Egan participated in the decision of this case prior to joining the sixth division.