386 So.2d 818 (1980)
STATE of Florida, Appellant,
v.
David Lance BRIDER, Appellee.
No. 79-2335.
District Court of Appeal of Florida, Second District.
July 18, 1980.
Rehearing Denied August 21, 1980.
Jim Smith, Atty. Gen., Tallahassee, and Eula Tuttle Mason, Asst. Atty. Gen., Tampa, for appellant.
Raymond O. Gross of Gross & Doherty, P.A., Clearwater, for appellee.
*819 GRIMES, Judge.
The state appeals from an order dismissing an information which charged appellee with possession of in excess of five grams of cannabis with intent to sell or deliver.
In granting the motion to dismiss, the court considered the following pertinent facts. The Pinellas County Sheriff's Department had obtained possession of a quantity of marijuana in a prior case. Through contacts with a confidential informant, the department reached agreement with a Mr. Hamilton for Hamilton to pay a certain price for the marijuana. Hamilton in turn contacted appellee and offered to sell him the marijuana. Appellee accepted the offer on behalf of two other individuals from whom he obtained $13,750, of which he gave $13,000 to Hamilton.
After Hamilton received the $13,000, he left appellee's company to obtain the marijuana and returned some time later in a station wagon accompanied by an undercover officer from the sheriff's department. The marijuana, which was sealed in plastic bags, was in the rear of the vehicle. Appellee got into the station wagon and directed Hamilton to drive to a secluded location where he and the officer each unloaded one of the bags. At this point, the two individuals to whom appellee had promised to deliver the marijuana arrived. Simultaneously, the officer, with the help of others who had converged on the scene, arrested appellee and Hamilton.
The premise upon which the court dismissed the information was that appellee never had possession of the marijuana. The record does not support this conclusion. Possession is defined as having personal charge or exercising the right of ownership, management or control over the article in question. To constitute possession, there need not be an actual handling of the article nor is it necessary that it be otherwise actually upon the person of the accused. There must only be a conscious and substantial possession by the accused as distinguished from a mere involuntary or superficial possession. State v. Eckroth, 238 So.2d 75 (Fla. 1970). Here, a jury could reasonably conclude that appellee had possession of the marijuana because he exercised control if not ownership of it by directing where it should be delivered and by helping to unload it at the appointed location. The fact that the undercover officer never intended to let appellee exercise ultimate control of the marijuana to the extent of removing it from the scene did not make appellee any less the possessor. The same argument could be made with respect to any controlled transaction with undercover police officers.
The more difficult question is whether these facts constituted entrapment as a matter of law. Ordinarily, entrapment is a jury question. State v. Liptak, 277 So.2d 19 (Fla. 1973). Nevertheless, the Florida courts have recognized that entrapment can exist as a matter of law. Smith v. State, 320 So.2d 420 (Fla. 2d DCA 1975); Spencer v. State, 263 So.2d 282 (Fla. 1st DCA 1972). Appellee's argument for entrapment in the trial court and here is that the state supplied him with the very contraband which it charged him with illegally possessing. If he is right, we would be obliged to affirm the order of dismissal even if the court did enter it for the wrong reason.
Appellee cites several cases for the proposition that entrapment exists as a matter of law where the government supplies the contraband with which the accused is later charged with illegally handling. E.g., United States v. Bueno, 447 F.2d 903 (5th Cir.1971); Messelt v. State, 351 So.2d 630 (Ala.Cr.App. 1977); State v. McKinney, 108 Ariz. 436, 501 P.2d 378 (1972); People v. Strong, 21 Ill.2d 320, 172 N.E.2d 765 (1961). In the Strong case, which other courts have often cited, the Supreme Court of Illinois reversed a conviction of selling, dispensing and possessing heroin and said:
[T]he undisputed testimony of defendant strongly tends to prove that defendant was supplied with the narcotics by Reynolds, the government employee. While we are sympathetic to the problems of enforcement agencies in controlling the *820 narcotics traffic, and their use of informers to that end, we cannot condone the action of one acting for the government in supplying the very narcotics that gave rise to the alleged offense. We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than mere inducement. In reality the government is supplying the sin qua non of the offense.
172 N.E.2d at 768.
Likewise, in United States v. Bueno the court of appeals held that entrapment was shown as a matter of law when an informer furnished narcotics to the defendant for sale to a government agent. The court reasoned that the defendant would not have had the heroin to sell had it not been furnished to him by the informer.
In neither of the cases discussed above did the courts suggest that the defendant had no predisposition to commit the crime, which is the circumstance ordinarily essential to the defense of entrapment. See State v. Dickinson, 370 So.2d 762 (Fla. 1979). The judge in United States v. Mahoney, 355 F. Supp. 418 (E.D.La. 1973), addressed the anomaly by pointing out that despite their references to entrapment the courts which dismiss charges under these circumstances generally do so on a theory of governmental misconduct.
If the foregoing authorities represented current law, the governmental involvement in the case at hand would suggest that appellee's argument has merit. However, recent developments indicate that we should proceed cautiously. The Illinois Supreme Court has now revisited People v. Strong. In reversing a holding of entrapment as a matter of law, the court in People v. Cross, 77 Ill.2d 396, 33 Ill.Dec. 285, 396 N.E.2d 812 (1979), said:
In our reconsideration of the subject and in light of the ever-growing drug problem, we are not so sure that the court should be so critical, as it was in Strong, of governmental action in infiltrating drug rings, and we do not believe that the courts should foreclose the possibility that a conviction of a predisposed individual could be sustained even though the government did furnish the controlled substance. The offense in question here is the unlawful delivery of a controlled substance and, although the government may have supplied the substance, the critical inquiry is whether the "criminal purpose" of selling these substances originated with the defendants (Ill. Rev. Stat. 1975, ch. 38, par. 7-12). By supplying an individual with controlled substances, the government is merely facilitating or providing the opportunity for the individual to make an unlawful delivery. This is not entrapment under our entrapment statute (Ill. Rev. Stat. 1975, ch. 38, par. 7-12). Any contrary statement in Strong, decided before enactment of the statute, should no longer be followed.
33 Ill.Dec. at 288, 396 N.E.2d at 815-16.
Even more significant is the decision of the United States Supreme Court in Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). There, the defendant was convicted for selling heroin to undercover federal agents pursuant to arrangements made by a government informant. The defendant took the position that he had obtained the heroin from the informant. The court refused to give the defendant's requested instruction that if the jury found that the narcotics had been supplied to him by the informant, it must acquit him regardless of his predisposition to commit the offense charged. The court of appeals affirmed, and, on certiorari, the United States Supreme Court also upheld the conviction. The Court's lead opinion, which reflected the views of three justices, pointed out that the defense of entrapment focuses upon the intent or predisposition of the defendant to commit a crime and held that in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the Court had ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct in a case where the government established the predisposition of the defendant to commit the crime. In Russell, the Court had sustained *821 a conviction for the unlawful manufacture and sale of methamphetamine even though the government had furnished the defendant with one of the essential ingredients to make the methamphetamine.
Two other justices who concurred in Hampton refused to go so far as to say that the concept of fundamental fairness inherent in the guarantee of due process would never prevent the conviction of a predisposed defendant regardless of the outrageousness of police behavior. They referred, for example, to a court of appeals decision which had held that it would be unthinkable to permit government agents to instigate robberies and beatings merely to gather evidence to convict other members of a gang of hoodlums. Nevertheless, they concurred in the conviction and despite their unwillingness to embrace an absolute rule, they concluded their opinion with the following footnote:
I emphasize that the cases, if any, in which proof of predisposition is not dispositive will be rare. Police overinvolvement in the crime would have to reach a demonstrable level of outrageousness before it could bar conviction. This would be especially difficult to show with respect to contraband offenses, which are so difficult to detect in the absence of undercover Government involvement. One cannot easily exaggerate the problems confronted by law enforcement authorities in dealing effectively with an expanding narcotics traffic, cf. United States v. Russell, supra [411 U.S.], at 432, [93 S.Ct. at 1643] 36 L.Ed.2d 366 [,373] L. Tiffany, D. McIntyre, & D. Rotenberg, Detection of Crime 263-264 (1967), which is one of the major contributing causes of escalating crime in our cities. See President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 221-222 (1967). Enforcement officials therefore must be allowed flexibility adequate to counter effectively such criminal activity.
425 U.S. at 495 n. 7, 96 S.Ct. at 1653 n. 7.
The Fifth Circuit Court of Appeals has acknowledged that Hampton effectively overruled its decision in Bueno. United States v. Benavidez, 558 F.2d 308 (5th Cir.1977). That court now seems to follow the principles expressed by the two concurring justices in Hampton. E.g., United States v. Hansen, 569 F.2d 406 (5th Cir.1978); United States v. Puma, 548 F.2d 508 (5th Cir.1977). Our supreme court may now have adopted the rationale of the lead opinion in Hampton when it recently stated, "We reject the inference raised by the trial court's holding that a high degree of law enforcement participation constitutes a defense to a criminal charge. That issue was squarely confronted in Russell and rejected; we agree with the United States Supreme Court's conclusion." State v. Dickinson, 370 So.2d at 763.
Proceeding on the premise that furnishing the contraband with which the defendant is later charged with handling, without more, does not constitute governmental misconduct, there is nothing in this record to indicate that the transaction in question was tainted by any governmental misconduct, much less the outrageous governmental misconduct which would be necessary to invoke the due process considerations discussed in the concurring opinion in Hampton. Moreover, the evidence before us would clearly support a conclusion that appellee had the predisposition to commit the crime with which he was charged. Therefore, there could be no entrapment as a matter of law. See Kimmons v. State, 322 So.2d 36 (Fla. 1st DCA 1975).
We reverse the order dismissing the information and remand the case for further proceedings.
BOARDMAN, Acting C.J., and CAMPBELL, J., concur.