505 So.2d 547 (1987)
Karen ROBERTS and Leonard Solie, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 85-6, 85-32.
District Court of Appeal of Florida, Third District.
April 7, 1987.
Rehearing Denied May 4, 1987.
*548 Bennett H. Brummer, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellants.
Robert A. Butterworth, Atty. Gen., and Margarita Muina Febres, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J.,[*] and DANIEL S. PEARSON and JORGENSON, JJ.
PER CURIAM.
This is a consolidated appeal by two defendants from their respective adjudications and sentences imposed after a jury found them guilty of unlawfully possessing marijuana in violation of Section 893.13(1)(e), Florida Statutes (1983). Although the defendants concede that the evidence shows that they plainly attempted such possession, they contend on appeal, as they did below, that the evidence adduced below fails to establish that they were ever in actual or constructive possession of the subject contraband, and that, accordingly, their convictions should be ordered reduced from the present third-degree felony to a first-degree misdemeanor, to-wit: attempted unlawful possession of marijuana, § 893.13(1)(e), Fla. Stat. (1983). We entirely agree with the defendants because they were arrested before the contraband was released into their actual or constructive possession, thus preventing their convictions for possession under our holding in Garces v. State, 485 So.2d 847 (Fla. 3d DCA 1986).
In this reverse sting operation, the defendants and eight codefendants (Holecek, Dobos, Arias, Rodriguez, St. James, Fiebig, Sipper and Swanson) surfaced as potential buyers for marijuana being offered for sale by undercover police agents posing as drug sellers. Within days of the earliest introductions, four agents  two driving a truck-load of between 700 and 1,200 pounds of marijuana  were led by two persons (Holecek and Dobos) to a residence occupied by Roberts and Solie. There, after introductions were made, everyone went inside the house where three additional persons (Arias, Rodriguez and St. James) were present.
Once inside, Roberts began negotiations with one of the agents, informing him that several individual buyers would be involved in the transaction. They eventually agreed that a total of 108 pounds of marijuana would be sold to the buyers by the agents. At Solie's suggestion, the agents moved the truck containing the marijuana, parking it at the rear of the house. Roberts then received a phone call and told one of the agents that certain prospective buyers had driven past the house and were "upset" by having seen "too many cars and too much activity." Solie directed the people in the house to move their cars across the street, and within a few minutes Fiebig and Sipper arrived with a tote bag containing money. A short time later, Swanson, the last of the co-defendants, entered the house.
*549 At Fiebig's request, an agent brought in a sample bale of marijuana weighing approximately twenty-eight pounds. Solie produced a scale, weighed the bale, and then cut the wrapping. After Roberts, Fiebig, Sipper, and Swanson examined the marijuana, Roberts, Fiebig, and Sipper agreed to buy marijuana from the agent and produced money. Significantly, and without dispute, Swanson then took possession of the sample bale, removed it from the scale, put it down next to a wall, and claimed it as his own. According to one of the agents:
"At that point, they said or somebody had mentioned well, Swanson doesn't have money for more than one. .. . It was understood that would be Mr. Swanson's bale since that would be the right poundage he needed."
Two of the agents, accompanied by an untrusting Solie, went outside to put the money in their car. Solie stayed with the car "to insure that [they] didn't run off with the money" before the marijuana was brought into the house. One agent, accompanied by Fiebig and Sipper, went to the truck and obtained three bales of marijuana. As they were walking towards the house, other officers who were waiting nearby were signaled, and, as the agent entered the house carrying the bale of marijuana, the arrest of all persons therein was announced and effected.
We turn first to Swanson's sample bale. Although it is clear that Solie touched it, the bale was brought into the residence for an inspection of the merchandise by the prospective buyers, and no agreement was finalized until after the inspection was made. However, it is also clear that this bale was not to be part of the purchase negotiated by Roberts, Fiebig and Sipper and was to be Swanson's alone. Under these circumstances, neither Solie's transitory touching of the bale nor the bale's presence in the house is sufficient to demonstrate that either Solie or Roberts possessed it, either actually or constructively. Actual possession is "`[t]he detention and control, or the manual or ideal custody, ... of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it... .'" Garces v. State, 485 So.2d at 848 n. 1 (quoting Black's Law Dictionary 1047 (5th ed. 1979)). See Doby v. State, 352 So.2d 1236 (Fla. 1st DCA 1977); Hively v. State, 336 So.2d 127 (Fla. 4th DCA 1976); Willis v. State, 320 So.2d 823 (Fla. 4th DCA 1975); Shaufele v. State, 269 So.2d 400 (Fla. 4th DCA 1972). Constructive possession similarly requires proof of control over the property:
"`Constructive possession exists where the accused without physical possession of the controlled substance knows of its presence on or about his premises and has the ability to maintain control over said controlled substance.' To establish constructive possession, the state must show that the accused had dominion and control over the contraband, knew the contraband was within his presence, and knew of the illicit nature of the contraband."

Brown v. State, 428 So.2d 250, 252 (Fla. 1983) (quoting Hively v. State, 336 So.2d at 129) (citations omitted).
Accord Diaz v. State, 467 So.2d 1061 (Fla. 3d DCA 1985); Muwwakil v. State, 435 So.2d 304 (Fla. 3d DCA 1983); Kickasola v. State, 405 So.2d 200 (Fla. 3d DCA 1981); Winchell v. State, 362 So.2d 992 (Fla. 3d DCA 1978); Harris v. State, 307 So.2d 218 (Fla. 3d DCA 1974).
As to the other three bales which were brought into the house, we believe, as we have said, that our decision in Garces v. State, 485 So.2d 847, is dispositive. There, an undercover police officer was introduced to an individual by an informant and was led from this meeting to a house where several other persons, including Garces, were present. A sale of cocaine was negotiated, and it was agreed that the buyers would bring their money into the house before the officers gave them the cocaine. Garces and another participant brought the money into the house, and a police officer brought the cocaine; Garces was handed *550 the cocaine by one of the other participants in the transaction and "examined it momentarily before passing it on" to another. The arrests were made "[w]hile the defendants were examining the cocaine, and before any money was exchanged... ." Id. at 848. Garces was convicted of trafficking by delivery or possession. This court reversed the conviction, reasoning as follows:
"It was held [in Sobrino v. State, 471 So.2d 1333 (Fla. 3d DCA 1985)] that a buyer or receiver of drugs commits a crime of possession, not delivery. We further noted that if the offense charged had been trafficking, the defendant could have been convicted of an attempted trafficking by possession ... but not of the completed offense because police officers effected an arrest before the drugs were released to the actual or constructive possession of the defendants. Temporary control of the contraband in the presence of its actual owner, for the purpose of verifying that it is what it purports to be or to conduct a sensory test for quality, prior to consummation of the completed transaction, without more, does not constitute legal possession.

"We agree, on the authority of Sobrino v. State,... that the facts supported a conviction for no more than attempted trafficking by possession and that the conviction should be reduced to the lesser offense accordingly."

Garces v. State, 485 So.2d at 848-49 (footnote omitted) (emphasis supplied).
In the present case, unlike Garces, the arrests were made before the marijuana was delivered, not before the money was exchanged. However, in either case, the contraband cannot be said to have come under the dominion and control of the defendants so as to establish the charge of possession. Accordingly, the defendants' convictions for possession of marijuana are reversed and the cause remanded with directions to enter judgment of conviction for the lesser offense of attempted possession and to appropriately resentence the defendants.
Reversed and remanded with directions.
NOTES
[*] Did not participate in oral argument.