558 So.2d 34 (1989)
Stanley CAMPBELL, Appellant,
v.
STATE of Florida, Appellee.
No. 88-2599.
District Court of Appeal of Florida, First District.
December 14, 1989.
Rehearing Denied April 3, 1990.
*35 William J. Dorsey, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Stanley Campbell appeals his conviction and the thirty-year sentence imposed for armed trafficking in cocaine. Three issues are presented for review: (1) the trial court's failure to charge the jury that temporary control of cocaine in the presence of the owner, for verification purposes, does not constitute possession; (2) the trial court's failure to charge the jury and to include in the verdict form the lesser included offense of attempted trafficking; and (3) the trial court's alleged failure to provide valid reasons for imposing a sentence which exceeded the recommended guidelines sentence range. We affirm in part and reverse in part.
By amended information filed August 9, 1988, appellant was charged with actual or constructive possession of 400 grams or more of cocaine while in possession of a firearm, and with trafficking in cocaine while carrying a concealed firearm. Appellant was tried before a jury on September 7, 1988.
At trial, Detective Locey, a Fort Lauderdale undercover police officer, testified that appellant was introduced to him as someone who wanted to buy kilograms of cocaine. The introduction was provided by an informant engaged in assisting law enforcement officers in order to gain a reduction of sentence for his own drug related charges.[1] Appellant, who lived in Georgia, initially refused to travel to Fort Lauderdale to conduct the drug transaction. It was agreed that the transaction would take place in Jacksonville, but Detective Locey insisted that appellant pay $5,000 up front as good faith and expense money, to show that he was serious about the cocaine purchase. Appellant promised to send the money the next day.
The following day, appellant called Detective Locey in Fort Lauderdale to advise of his concern about paying $5,000 without getting anything in return. In addition, appellant proposed to travel to Fort Lauderdale to complete the deal over the weekend. Detective Locey insisted on staying with the original schedule, but agreed to an advance payment of $3,000 rather than $5,000. On June 3, 1988, Detective Locey called appellant to advise that he was in receipt of the $3,000 appellant had wired. During that conversation, appellant told Detective Locey that he had a partner, and wanted to buy four kilograms of cocaine rather than two. This telephone conversation was recorded, as were two other telephone conversations between Detective Locey and appellant. The tapes were played for the jury.
On June 5, 1988, Detective Locey was in Jacksonville, but did not reveal that fact to appellant when he spoke to him by telephone. At 1:00 p.m. on June 6, 1988, Detective Locey again spoke to appellant and advised that he was ready to complete the deal. During this conversation, the two discussed the quality of the cocaine, and appellant said he planned to cook some of it, and the rest would be used for snorting. Detective Locey's next contact with appellant was at 7:50 p.m., at a pay telephone number given to the detective by appellant's family in Savannah. Although Detective *36 Locey planned to complete the deal at a motel, appellant insisted that the transaction take place at a liquor store. Appellant told the detective that he would be waiting in a white Cadillac Seville.
When Detective Locey arrived at the liquor store, he observed appellant parked at an adjacent service station. The detective walked over to appellant's car, and told appellant that he was nervous about being in the area, and that "his guys" were across the street with the cocaine and they were going to do the deal there. Detective Locey told appellant that he wanted to see the money before they went any further, whereupon appellant took a green bank bag from the trunk of the Cadillac, got back in the car, and opened the bag to show the money to the detective. Detective Locey then walked across the street to McDonald's where other undercover officers were stationed. He directed appellant to a parking space next to the undercover car occupied by the detective's partners. Detective Locey was wearing a body "bug," and the tape of the transaction was played for the jury.
Detective Locey and appellant got in the back seat of the undercover police car. An undercover officer in the front seat handed Detective Locey a brown sack containing a kilo of cocaine weighing approximately 2.2 pounds. When Detective Locey handed the cocaine to appellant, appellant observed that it was too small for four kilos. The detective advised that this was only part of the cocaine, so that appellant could check the quality before they completed the deal. After a discussion about the cocaine's quality, appellant expressed himself as very satisfied with it. Appellant and Detective Locey then exited the undercover police car, leaving the kilo of cocaine on the back seat of the car. Once appellant emerged from the car, the arrest signal was given and he was taken into custody. Attendant upon the search following his arrest, a .38 caliber pistol was discovered concealed on appellant's person. Prior to the arrest, the officers were unaware that appellant had a weapon.
During the charge conference, defense counsel raised no objection to any of the jury instructions the trial court proposed to give. However, counsel requested the following special instruction taken from Garces v. State, 485 So.2d 847 (Fla. 3d DCA 1986):
Temporary control of contraband in the presence of an actual owner for the purpose of verifying that it is what it purports to be or to conduct the test for quantity prior to completion of the transaction, without more, does not constitute legal possession.
The prosecutor objected, noting that appellant had raised this issue in his motion for judgment of acquittal, and the court had ruled adversely to appellant at that time. The trial court denied the requested special instruction, finding the instant case factually distinguishable from Garces. Upon further query by the trial court, defense counsel again stated that he had no objection to any of the other proposed instructions. When the jury retired to deliberate, defense counsel reiterated his satisfaction with the instructions given.
The jury found appellant guilty of trafficking in 400 grams or more of cocaine while carrying a firearm, and not guilty of use of a firearm in commission of a felony. The trial court imposed a thirty year sentence, which included the fifteen year mandatory minimum sentence and $250,000.00 fine, pursuant to section 893.135, Florida Statutes.
The first issue raised in this appeal concerns the trial court's failure to give appellant's requested special instruction that temporary control of contraband in the presence of its actual owner, for verification purposes, does not constitute legal possession. The trial court found that the Florida Standard Jury Instructions (Criminal) on trafficking in cocaine, trafficking in cocaine with a firearm, and the lesser included offense of possession of cocaine sufficiently encompassed the facts in this case. The verdict form for count one listed trafficking in cocaine and possession of cocaine; the verdict form for count two listed only two options  guilty or not guilty of *37 use of a firearm during commission of a felony.
The crime of trafficking in cocaine is committed by
[a]ny person who knowingly, sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of 28 grams or more of cocaine as described in s. 893.03(2)(a)4. or of any mixture containing cocaine .. .
§ 893.135(1)(b), Fla. Stat. (1987). Actual possession is the dominion over and the ability to control the contraband in question. Carter v. State, 481 So.2d 1252, 1253 (Fla. 3d DCA 1986), review denied, 492 So.2d 1330 (Fla. 1986). Constructive possession is established by showing that (1) the defendant had the ability to exercise dominion and control over the contraband; (2) the defendant knew the contraband was in his presence; and (3) the defendant knew of the illicit nature of the contraband. Brown v. State, 428 So.2d 250, 252 (Fla.), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983); Elias v. State, 526 So.2d 1014, 1015 (Fla. 2d DCA 1988). See also State v. Brider, 386 So.2d 818, 819 (Fla. 2d DCA), review denied, 392 So.2d 1372 (Fla. 1980) ("Possession is defined as having personal charge or exercising the right of ownership, management or control over the article in question.").
The factual circumstances of the instant case are analogous to the fact scenarios presented in Garces v. State, 485 So.2d 847 (Fla. 3d DCA 1986) and Roberts v. State, 505 So.2d 547 (Fla. 3d DCA 1987). In Garces, an arrest was effected while the defendant was examining the cocaine, and before any money changed hands. There, the court concluded that
[t]emporary control of the contraband in the presence of its actual owner, for the purpose of verifying that it is what it purports to be or to conduct a sensory test for quality, prior to consummation of the contemplated transaction, without more, does not constitute legal possession.
485 So.2d at 848. Finding that the facts in Garces would support a conviction for no more than attempted trafficking by possession, the court remanded with directions to reduce the conviction to the lesser offense, and to resentence the defendant.
Similarly, in Roberts, although money had been transferred, the arrest was effected before there had been an actual delivery of marijuana. In Roberts, the court found that
the contraband cannot be said to have come under the dominion and control of the defendants so as to establish the charge of possession. Accordingly, the defendants' convictions for possession of marijuana are reversed and remanded with directions to enter judgment of conviction for the lesser offense of attempted possession and to appropriately resentence the defendants.
505 So.2d at 550.
In this case, as in Garces, appellant examined the contraband, and then was arrested before transferring the money in the trunk of his car to the purported sellers, i.e., the undercover officers. By the same token, here, as in Roberts, the contraband was not in appellant's actual possession or control at the moment of his arrest. Rather, the cocaine had been left on the back seat of the undercover police car, and in the presence of the two undercover officers who were seated in the front of the car.
Despite the obvious factual similarities between this case and the two Third District cases, we agree with the trial court that there are additional facts existing in this case which remove it from the rule enunciated in Garces and reiterated in Roberts. First, the record reflects that appellant made an advance payment of $3,000 for a contemplated purchase of four kilograms of cocaine. The agreed-upon price per kilo was $13,500, or a total purchase price of $54,000. When appellant was arrested and the green bank bag seized, the bag was found to contain $50,660. On these facts, the jury could reasonably infer that the $3,000 upfront payment constituted an advance or down payment against the total purchase price, thereby giving appellant some interest in and the ability to exercise some dominion and control over *38 the cocaine. In other words, the proof of partial payment would support an inference that appellant had bought an ownership interest in the cocaine. Second, during the taped conversation which occurred when appellant was in the back seat of the undercover officers' car, appellant expressed satisfaction with the quality of the cocaine and his agreement to purchase it. We believe that this was sufficient to indicate appellant's acceptance of that portion of the cocaine.
Thus, the evidence presented at trial in this case clearly established two of the elements of constructive possession, i.e., appellant knew the contraband was within his presence and knew of the illicit nature of the contraband. Appellant held the package of cocaine, tasted it, and discussed its quality with the other occupants of the car. Proof of the remaining element, that appellant had the ability to establish dominion and control over the cocaine, can be shown by the reasonable inference to be drawn from the $3,000 advance payment. See, generally, Carter v. State, 481 So.2d 1252 (Fla. 3d DCA 1986), review denied, 492 So.2d 1330 (Fla. 1986). Therefore, while the special jury instruction could be seen as appropriate to this case, in view of the factors present here that are not present in Garces and Roberts, denial of the special instruction does not constitute reversible error.
The second issue concerns the trial court's failure to instruct the jury on the lesser included offenses of attempted trafficking and attempted possession. We note at the outset that, absent fundamental error, courts will not consider an issue raised for the first time on appeal. White v. State, 446 So.2d 1031, 1034-35 (Fla. 1984); Steinhorst v. State, 412 So.2d 332 (Fla. 1982). By the same token, there is no constitutional right to an instruction on necessarily lesser included offenses in non-capital cases. In other words, where non-capital cases are involved, failure to instruct even as to necessarily lesser included offenses will not be deemed fundamental error. Jones v. State, 484 So.2d 577, 578-579 (Fla. 1986). See also Aguilera v. State, 526 So.2d 217 (Fla. 3d DCA 1988) (defense counsel's specific agreement with the trial court's determination not to instruct on necessarily lesser included offenses in the non-capital case precluded raising the issue on appeal). Moreover, the failure to request a particular jury instruction or to raise objections to the instructions as given will preclude a finding of error in this regard on the part of the trial court. Lawrence v. State, 330 So.2d 160 (Fla. 1st DCA 1976); Mitchell v. State, 321 So.2d 108 (Fla. 1st DCA 1975), cert. dismissed, 345 So.2d 425 (Fla. 1977). Accord Montoya v. State, 489 So.2d 794 (Fla. 3d DCA), review denied, 496 So.2d 143 (Fla. 1986) (failure to request a jury instruction amounts to waiver of an entitlement to such instruction).
In State v. Daophin, 533 So.2d 761, 762 fn. 2 (Fla. 1988), the court noted that the standard jury instructions have been amended "to provide that there [are] no necessarily lesser included offenses (category one) to 893.135 and to reclassify the former category one offenses as category two, permissive lesser included offenses." The Florida Bar Re Standard Jury Instructions  Criminal, 508 So.2d 1221, 1234-35 (Fla. 1987). The court determined that for a defendant to be entitled to an instruction on permissive lesser included offenses (category two), the accusatory pleadings and the evidence must support the commission of the permissive lesser included offenses.
The record in this case reflects that defense counsel did not request a jury instruction on either attempted trafficking or attempted possession. Moreover, with the exception of the trial court's refusal to give the requested Garces instruction, defense counsel expressed satisfaction with the instructions as given. In addition, the accusatory pleadings in this case did not charge either attempted trafficking or attempted possession, although arguably the evidence would support a finding of attempt. The trial court did, however, instruct on possession as a lesser included offense of trafficking. Appellant's failure to request jury instructions on attempt and failure to *39 record any objection to the instructions as given, other than the objection concerning refusal of the Garces instruction, precludes consideration of this issue on appeal.
The third issue concerns the validity of the reasons relied upon by the trial court to support the departure sentence. As a preliminary matter, because the subject offenses were committed after the effective date of amended section 921.001, Florida Statutes, the departure sentence must be upheld if "at least one circumstance or factor justifies the departure regardless of the presence of other circumstances or factors found not to justify departure." See Ch. 87-110, § 2, Laws of Fla.; § 921.001(5), Fla. Stat. (1987); Brown v. State, 535 So.2d 671 (Fla. 1st DCA 1988). In addition, the standard of proof necessary to support a departure from the recommended sentence has been changed to a preponderance of the evidence. § 921.001(5), Fla. Stat. (1987).
The trial court's first reason for departure in this case was that appellant "was free on bond and awaiting trial for Trafficking in Cocaine at the time he committed the present offense." Florida Rule of Criminal Procedure 3.701(d)11. expressly proscribes deviation from the guidelines predicated on "factors relating to prior arrests without conviction." Further, in Sims v. State, 522 So.2d 496, 498-499 (Fla. 1st DCA 1988), this court noted "[t]hat a defendant has committed an offense while out on bond for a similar offense on which the defendant was not convicted has been held to be an invalid reason for departure." See also Fisher v. State, 489 So.2d 857, 858 (Fla. 1st DCA), review denied, 500 So.2d 545 (Fla. 1986); McIntyre v. State, 539 So.2d 603 (Fla. 3d DCA 1989); Johnson v. State, 535 So.2d 651 (Fla. 3d DCA 1988); Paschall v. State, 501 So.2d 1370, 1372 (Fla. 2d DCA 1987); Echevarria v. State, 492 So.2d 1146 (Fla. 3d DCA 1986).
The state's reliance on Smith v. State, 532 So.2d 70 (Fla. 1st DCA 1988), as authority for the first departure reason in this case, is misplaced. In Smith, the court noted that the defendant "committed and was convicted of crimes which occurred while he was released on his own recognizance." 532 So.2d at 71 (emphasis supplied). Thus, Smith is completely consistent with Sims, and other cases precluding departure based on offenses for which there have been no convictions. Similarly, Snelling v. State, 500 So.2d 328 (Fla. 1st DCA 1986), is insufficient to support the first departure reason in this case. In Snelling, the court found that after appellant had been released on his own recognizance, "he committed two additional theftrelated crimes." Although not stated expressly in the opinion, it is reasonable to infer that convictions had been obtained for the additional crimes, due to the use of the word "committed" rather than use of the phrase "was arrested for."
In this case, appellant purportedly had been released on bond following his arrest on drug-related offenses, when he was contacted by a police informant as part of a reverse sting operation. It is undisputed that a conviction had not been obtained for the prior arrest, and that appellant had no prior record. In light of extensive authority that a departure reason may not be based on prior arrests for which convictions have not been obtained, the first departure reason is invalid.
The second reason, that the crime was committed with substantial premeditation, is clearly invalid, and indeed the state concedes as much. In State v. Fletcher, 530 So.2d 296, 297 (Fla. 1988), the court held that all large drug trafficking cases inherently involve calculated premeditation and planning. Consequently, premeditation in the drug trafficking context cannot constitute a valid reason for departure.
The third reason for departure was that the crime was committed in a highly professional manner. The Third District has held that executing the crime of trafficking in cocaine in a professional manner is not a clear and convincing reason for departure, "because the stated reason is an inherent component of the crime of trafficking in cocaine." Collins v. State, 535 So.2d 661, 663 (Fla. 3d DCA 1988). In fact, in Collins, the state agreed that the professional manner in which the crime was committed *40 was an invalid reason for departure. Accord Rivera v. State, 543 So.2d 441 (Fla. 3d DCA 1989).
On the other hand, the Fourth District, in D'Angelo v. State, 541 So.2d 706 (Fla. 4th DCA 1989), approved departure based on the professional manner in which a crime is committed. D'Angelo also concerned cocaine trafficking, as does Young v. State, 502 So.2d 1347 (Fla. 2d DCA 1987), cited by the D'Angelo court and the trial court in this case. However, in Young, the court relied on Brown v. State, 480 So.2d 225 (Fla. 5th DCA 1985) and Dickey v. State, 458 So.2d 1156 (Fla. 1st DCA 1984), neither of which concern cocaine trafficking as the underlying offense.
In Downing v. State, 536 So.2d 189, 193 (Fla. 1988), the supreme court, citing Dickey, did not rule out the professional manner in which a crime is committed as a valid departure reason. However, in Downing, the reason was deemed invalid because many of the circumstances relied upon to support the defendant's professionalism occurred after his arrest and had little to do with how the crime was committed.
Appellant's conduct in this case is a curious mix of professionalism and seeming inexperience. Although his initial refusal to travel to Fort Lauderdale for the drug purchase could be considered professional, in that appellant would have been operating in the seller's territory, the decision may have been based on nothing more than reluctance to travel a long distance. Similarly, appellant's failure to meet Detective Locey at the agreed-upon time could be construed as either an exercise in caution, or simply inadvertence. By the same token, appellant's refusal to meet the seller at a motel indicates a professional touch, since he would be at less risk in a transaction conducted in public. However, his conduct in wiring $3,000.00 to a purported dealer unknown to him appears less than professional, as does his willingness to enter a car occupied by three persons who were strangers to him. We conclude that, when viewed in its entirety, the evidence in this case is insufficient to support departure based on the professional manner in which the crime was committed.
The fourth reason for departure was that appellant is a drug dealer. This reason is invalid, because being a drug dealer is an inherent component of the crime of drug trafficking. Garcia v. State, 521 So.2d 191 (Fla. 1st DCA 1988); Rivera v. State, 543 So.2d 441 (Fla. 3d DCA 1989); Laurent v. State, 542 So.2d 1067 (Fla. 2d DCA 1989); Young v. State, 502 So.2d 1347 (Fla. 2d DCA 1987).
The fifth departure reason was that appellant was armed with a firearm, thereby creating an unreasonable risk of harm to others. Since appellant was convicted of armed trafficking in cocaine, the fact that he was armed with a firearm is an inherent component of the convicted offense. As such, it is an invalid reason for departure. See, generally, Scurry v. State, 489 So.2d 25, 28 (Fla. 1986). Moreover, the state concedes that the facts in this case will not support a finding that appellant posed an unreasonable risk of harm to others. See, generally, Lerma v. State, 497 So.2d 736 (Fla. 1986); Everage v. State, 504 So.2d 1255, 1258 (Fla. 1st DCA 1986), review denied, 508 So.2d 13 (Fla. 1987).
As a final note, it is well settled that an appellate court will not consider issues that were not presented to the trial judge. White v. State, supra; Dober v. Worrell, 401 So.2d 1322 (Fla. 1981); Atwood v. Hendrix, 439 So.2d 973 (Fla. 1st DCA 1983). The entrapment defense suggested in appellant's initial brief and expanded in the reply brief, was not presented to the trial court in any manner. Rather, at trial, the entire defense theory was that the state failed to prove possession. In these circumstances, we decline to consider appellant's entrapment argument predicated on the decision in Hunter v. State, 531 So.2d 239 (Fla. 4th DCA 1988).
In summary, we find the trial court did not err in refusing to give the Garces instruction. Further, in the absence of a request for an instruction on attempt, the trial court's failure to instruct on attempted trafficking and attempted possession was not error. Appellant's entrapment *41 theory suffers from the same deficiency, i.e., since the question was not raised at trial, appellant is not entitled to have it considered on appeal. However, we find the reasons relied upon for imposition of the departure sentence in this case are either invalid or without sufficient support in the record, and reverse with regard to point three. As a final note, we find the record in the instant case includes factors which remove the case from the principle recited in Garces and Roberts. Nevertheless, due to the strong factual similarities between this case and Garces and Roberts, out of an abundance of caution, we certify that our decision in this case conflicts with a decision of the Third District on the same point of law.
Accordingly, appellant's conviction is affirmed, but the sentence is reversed and remanded for resentencing.
SHIVERS, C.J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissenting.
I would not reach the disposition of issues two and three raised in this appeal, because I would reverse as to issue one relating to the trial court's refusal to charge the jury that the temporary control of cocaine in the presence of the owner by appellant for the purpose of verifying the nature of the substance does not constitute possession, and would remand the case for new trial. The majority's affirmance of the first issue is based upon its conclusion that the state's proof of the third element relating to constructive possession  that appellant had the ability to establish dominion and control over the cocaine  could be shown by the reasonable inference drawn from the $3,000.00 advance payment, as well as appellant's statements expressing satisfaction with the quality of the cocaine shown to him and his agreement to purchase it. Nevertheless, the propriety of a court's refusal to charge on a requested instruction relating to an accused's defense cannot be based simply upon reasonable inferences when there is some other evidence that supports the request.
Issue number one  unlike the issues before the Third District Court of Appeal in Roberts v. State, 505 So.2d 547 (Fla. 3d DCA 1987), and Garces v. State, 485 So.2d 847 (Fla. 3d DCA 1986) (both holding that the trial court erred in imposing convictions for actual or constructive possession of contraband, and that the evidence supported convictions only for the lesser offenses of either attempted possession or attempted trafficking by possession)  requires us to decide only whether the trial court erred in refusing to give the requested instruction. The rule has been long established that a defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instruction. See, e.g., Hooper v. State, 476 So.2d 1253 (Fla. 1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1501, 89 L.Ed.2d 901 (1986); Randolph v. State, 526 So.2d 931 (Fla. 1st DCA) review denied, 536 So.2d 245 (Fla. 1988); Pope v. State, 458 So.2d 327 (Fla. 1st DCA 1984), review denied, 462 So.2d 1108 (Fla. 1985); Tobey v. State, 533 So.2d 1198 (Fla. 2d DCA 1988), review denied, 542 So.2d 990 (Fla. 1989); Heddleson v. State, 512 So.2d 957 (Fla. 4th DCA 1987). In Pope v. State, we observed that the evidence need not be convincing to the trial court before the instruction is submitted to the jury; it is only required that the defense be suggested from the testimony. Pope, 458 So.2d at 329.
In the present case there was some evidence before the jury relating to the defendant's theory of his defense  i.e., that he could not be convicted of the completed offense of trafficking in cocaine by possessing it, because his possession of it was only temporary. As pointed out in the majority's opinion, the defendant had contemplated purchasing four kilograms of cocaine for a total price of $54,000.00. Although he had made a partial advance payment of $3,000.00 toward purchase of the contraband, the payment had been made three days before the defendant's arrest and before his opportunity to inspect the cocaine. Significantly, in the present case, the arrest occurred before any of the contraband had transferred *42 hands, and before the appellant had delivered the remainder of the contemplated total purchase price of $54,000.00 to the officers. Although there are reasonable inferences that the sale would have been consummated, there are also reasonable inferences that the transaction might not have been completed. Particularly, at the time that he was arrested, appellant never had the opportunity to inspect the remaining three kilograms of cocaine which he had discussed purchasing. It is not inconceivable that if the appellant had been dissatisfied with the quality of the remainder of the cocaine, after having inspected only one of the four kilograms, the deal may never have been completed, in that the transaction contemplated the sale of all four kilograms.
In my judgment the facts at bar are perhaps more compelling for the requested instruction than they would have been in Roberts v. State, if such an instruction had been requested, because in Roberts the arrests were made before the contraband was delivered, but not before the money was exchanged. Nevertheless, as the Third District recognized in both cases, the contraband could not be said to have come within the dominion and control of the defendants in order to establish the completed offense of possession.
Accordingly, because there was some evidence from which the jury could have inferred that the defendant temporarily controlled the contraband for the purpose only of verifying what it purported to be, the requested charge in my judgment should have been given. I would therefore reverse the conviction with directions that a new trial be granted.
NOTES
[1] Under the provisions of section 893.135(4), Florida Statutes (1987), a state attorney "may move the sentencing court to reduce or suspend the sentence of any person who is convicted of a violation of this section, and who provides substantial assistance in the identification, arrest, or conviction of any of his accomplices, accessories, co-conspirators, or principals or of any other person engaged in trafficking in controlled substances."