577 So.2d 932 (1991)
Stanley CAMPBELL, Petitioner,
v.
STATE of Florida, Respondent.
No. 75873.
Supreme Court of Florida.
February 14, 1991.
Rehearing Denied April 25, 1991.
William J. Dorsey of the Law Offices of William J. Dorsey, Jacksonville, for petitioner.
Robert A. Butterworth, Atty. Gen. and Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for respondent.
KOGAN, Justice.
We have for review Campbell v. State, 558 So.2d 34 (Fla. 1st DCA 1989), in which the First District Court of Appeal certified its decision as being in conflict with the decisions of the Third District Court of Appeal in Garces v. State, 485 So.2d 847 (Fla. 3d DCA 1986), and Roberts v. State, 505 So.2d 547 (Fla. 3d DCA 1987). We have jurisdiction, article V, section 3(b)(4), Florida Constitution, and quash the decision below.
Campbell was convicted of trafficking in 400 grams or more of cocaine while carrying a firearm in violation of sections 893.135(1)(b)3 and 775.087, Florida Statutes (1987), and was sentenced to thirty years' imprisonment. The conviction resulted from a reverse-sting operation in which Campbell sought to purchase four kilograms of cocaine from an undercover police officer.
According to testimony at trial, Campbell was introduced to Detective Locey, a Fort Lauderdale undercover police officer, by a *933 police informant as someone who wanted to buy cocaine. Detective Locey made arrangements over the telephone to meet Campbell, who lived in Georgia, in Jacksonville. After further phone negotiations, the two agreed that Campbell would pay an advance of $3,000 as good faith and expense money. Upon notifying Campbell that he was in receipt of the $3,000 which Campbell had wired, Detective Locey was informed that Campbell wanted to purchase four kilograms of cocaine rather than the two originally discussed. These telephone conversations were recorded and played to the jury.
After his arrival in Jacksonville, Detective Locey agreed to meet Campbell at a local liquor store. The two ultimately met at a service station adjacent to the liquor store. Detective Locey wore a body "bug" throughout the following transaction, a tape of which was played to the jury. Upon request, Campbell took a green bag of money from his trunk and showed it to the officer. After instructing Campbell to drive across the street to McDonald's where his partners were parked, the detective walked across the street to the undercover police car. Detective Locey directed Campbell to park next to the undercover car, which was occupied by two undercover officers. The two got in the back seat of the undercover car. One of the officers in the front seat handed a sack containing a "kilo" (according to testimony 995 grams) of cocaine to Detective Locey, who then handed the bag to Campbell, who placed the bag on his lap. Campbell was told this was only a portion of the cocaine he was to purchase, so he could check the quality prior to completing the deal. After discussion, Campbell expressed satisfaction with the kilo inspected and said he would "take that."[1] After Campbell approved the kilo, he left it on the back seat of the undercover car, and he and Detective Locey exited the car to get the money and the remainder of the cocaine that Campbell had been led to believe was in the trunk.[2] Campbell was arrested after exiting the car. A search incident to his arrest revealed a .38-caliber pistol concealed on Campbell's person.
At the close of the state's case, defense counsel moved for a judgment of acquittal. Relying on Garces, counsel took the position that since the arrest was made before the transaction was completed, Campbell never had possession of the cocaine. Although the motion was denied, defense counsel later requested the following special instruction taken from Garces:
Temporary control of contraband in the presence of an actual owner for the purpose of verifying that it is what it purports to be or to conduct the test for [quality] prior to completion of transaction without more does not constitute legal possession.
The prosecutor objected, stating that the court had already ruled on the issue "at the appropriate time which was at the time of the motion for judgment of acquittal." The trial court denied the requested instruction, concluding that the standard jury instructions,[3] to which defense counsel had no objection, "are applicable here because *934 ... we have more facts in this case than they did in [Garces]."
On appeal, the district court affirmed the conviction but reversed the sentence and remanded for resentencing based on an error that is not an issue before this Court. Campbell, 558 So.2d at 41. The district court found that the record in this case includes factors that remove it from the principle recited by the Third District in Garces and Roberts. However, "due to the strong factual similarities" between the cases, the court certified its decision as in conflict with the decisions of the Third District. Id. at 41.
We begin our analysis by noting that both Garces and Roberts dealt with the denial of a motion for judgment of acquittal rather than the trial court's refusal to give a special instruction such as that requested in this case. In Garces, an undercover officer was introduced to an individual who was interested in purchasing cocaine. After several meetings and phone calls, the officer met the prospective purchaser at his home where several other persons, including Garces, were present. After some discussion, the buyers agreed to bring their money into the house before the officer gave them the cocaine. After the money and cocaine were brought into the house, one of the other prospective buyers handed a pack of cocaine to Garces, who "examined it momentarily before passing it on" to another. Garces, 485 So.2d at 848. The arrests were made "[w]hile the defendants were examining the cocaine, and before any money was exchanged." Id.
As in the instant case, Garces' motion for judgment of acquittal based on the state's failure to prove that he was in possession of the cocaine was denied by the trial court. Id. On appeal, the Third District Court reversed Garces' conviction of trafficking by possession and remanded for reduction of the conviction to the lesser offense of attempted trafficking by possession. The court explained:
It was held [in Sobrino v. State, 471 So.2d 1333 (Fla.3d 1985)] that a buyer or receiver of drugs commits a crime of possession or attempted possession, not delivery. We further noted that if the offense charged had been trafficking, the defendant could have been convicted of an attempted trafficking by possession ... but not of the completed offense because police officers effected an arrest before the drugs were released to the actual or constructive possession of the defendants. Temporary control of the contraband in the presence of its actual owner, for the purpose of verifying that it is what it purports to be or to conduct a sensory test for quality, prior to the consummation of the contemplated transaction, without more, does not constitute legal possession.

Garces, 485 So.2d at 848 (emphasis added; citation and footnote omitted).
In Roberts, the Third District applied the rule stated in Garces to reverse convictions for possession of marijuana in violation of section 893.13(1)(e), Florida Statutes (1983), where the defendants "were arrested before the contraband was released into their actual or constructive possession." Roberts, 505 So.2d at 548. In Roberts, an undercover officer was negotiating a sale of marijuana with a number of individuals. The defendants and other prospective purchasers examined a "sample bale" of marijuana, which was then taken by one of the others "as his own." Id. at 549. Although the defendants agreed to purchase the marijuana, which had not yet been brought into the house, and gave the officer money for it, the arrests were made before the marijuana was delivered. Id. at 550.
On appeal, relying on the rule stated in Garces, the Third District reversed the possession convictions and remanded with directions to enter judgments of conviction for the lesser offense of attempted possession. As to the sample bale, the court reasoned that the defendants could not be convicted of possessing that bale because it was not to be a part of the purchase negotiated by the defendants and was the other purchaser's alone. Roberts, 505 So.2d at 549. The court further reasoned that the defendants could not be found guilty of possessing the other bales, which were *935 brought into the house just prior to the arrests, "because [the defendants] were arrested before the contraband was released into their actual or constructive possession." Id. at 548.
The rule applied in Garces and Roberts is based on the requirement that for one to be in actual or constructive possession[4] of contraband, the contraband must have come under his dominion or control. See Brown v. State, 428 So.2d 250 (Fla.) (constructive possession exists where one without physical possession of the controlled substance), knows of its illicit nature and of its presence on or about his premises and has the ability to maintain control over the substance), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983); State v. Eckroth, 238 So.2d 75 (Fla. 1970) (defining possession as "the act or condition of having in or taking into one's control or holding at one's disposal"); see also State v. Brider, 386 So.2d 818, 819 (Fla. 2d DCA) ("Possession is defined as having personal charge or exercising the right of ownership, management or control over the article in question."), review denied, 392 So.2d 1372 (Fla. 1980); Black's Law Dictionary 1163 (6th ed. 1990) ("Having control over a thing with the intent to have and to exercise such control."). While the question of whether a defendant had dominion or control over contraband is generally a factual question for the jury, see, e.g., Carter v. State, 481 So.2d 1252 (Fla. 3d DCA), review denied, 492 So.2d 1330 (Fla. 1986); Brider, a judgment of acquittal is proper where there is no evidence from which dominion or control can be inferred. We agree with the Third District that such is the case where the defendant takes temporary possession of contraband, in the presence of the owner, for the sole purpose of verification or testing, and there is no other evidence from which dominion or control could be inferred.
In affirming the court's refusal to give the requested instruction in the instant case, the district court agreed "with the trial court that there are additional facts [the $3,000 upfront payment, and Campbell's statement that he would take the kilo sampled] existing in this case which remove it from the [Garces] rule." Campbell, 558 So.2d at 37. It is true that on this record "the jury could reasonably infer" that Campbell had "some interest in and the ability to exercise some dominion and control over the cocaine," id. at 37-38, thus precluding the entry of a judgment of acquittal. However, it does not follow that Campbell was not entitled to the requested special instruction. As this Court has recognized, "a defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instruction." Smith v. State, 424 So.2d 726, 732 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983); see also 558 So.2d at 41 (Ervin, J., dissenting). In this case, while there was evidence from which the jury could have found Campbell had dominion and control over the kilo tested, there was also evidence from which the jury could have concluded that Campbell possessed the cocaine temporarily for the sole purpose of testing it and never had dominion or control. For example, when asked by defense counsel during cross-examination, "Was there ever a time when Mr. Campbell could have physically left the area with the cocaine?," Detective Locey answered "After he paid us the money, yes." It is clear from the testimony that Campbell was arrested before any money, other than the $3,000, had passed hands.[5]
*936 Accordingly, because there was evidence from which the jury could have accepted Campbell's defense of temporary possession for testing purposes, we quash the decision below and remand for a new trial wherein the Garces instruction shall be given.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
NOTES
[1] According to testimony of the undercover officers present during the taping of the transaction as played to the jury, Campbell was referring to the kilo of cocaine on his lap when he said "All right, I'll take that."
[2] According to testimony, the kilo that was inspected by Campbell was the only cocaine brought to the scene by the police.
[3] The jury was given the following instructions on possession:

To possess means to have personal charge of, or exercise the right of ownership, management or control over the thing possessed. Possession may be actual or constructive. If a thing is in the hand of or on the person or is so close as to be within ready reach and is under the control of the person, it is in the actual possession of that person. If a thing is in a place over which the person has control over [sic] or which the person has hidden or concealed it, it is in the constructive possession of that person. Possession may be joint. That is, two or more persons may jointly have possession over an article exercising control over it and in that case each of those persons is considered to be in possession of that article.
If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed. If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.
[4] We note that there was testimony that Campbell had the kilo of cocaine on his lap while inspecting it and at the time he said he would take it. Therefore, there was evidence that Campbell was in actual possession of the cocaine, making resort to a constructive possession analysis, as was undertaken by the district court below, unnecessary. It also appears from the record that the prosecution took the position that Campbell was in actual possession of the cocaine.
[5] We note that the fact that the undercover officers obviously never intended to allow Campbell to exercise ultimate control over the contraband by removing it from the scene does not preclude a conviction for possession. As was noted by then-Judge Grimes in State v. Brider, 386 So.2d 818, 819 (Fla. 2d DCA), review denied, 392 So.2d 1372 (Fla. 1980), "[t]he same argument could be made with respect to any controlled transaction with undercover police officers."