STATE of Missouri, Respondent,

v.

Michael GASPERINO, Appellant.)

No. WD 45818.

Missouri Court of Appeals,
Western District.

June 8, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 1993.

Application to Transfer Denied
Sept. 28, 1993.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, C.J., and SPINDEN and SMART, JJ.

LOWENSTEIN, Chief Judge.

A jury convicted defendant Michael Gasperino of possession of a controlled substance with intent to distribute in violation of § 195.211, RSMo Cum.Supp.1993. Gasperino received a five-year prison sentence in accordance with the jury's verdict. The defendant's sole point on appeal claims the trial court erred in denying his motion for judgment of acquittal. He contends the State presented insufficient evidence to 1) identify the substance as marijuana; and 2) show his possession. Section 195.010(33), RSMo Cum.Supp.1993 defines possession as follows:

"(33) **"Possessed"** or **"possessing a controlled substance"**, a person, with the knowledge of the presence and illegal nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A *person* who, although *not* in *actual possession*, has the *power and* the *intention* at a given time *to exercise dominion or control over the substance* either directly or through another person or persons *is in constructive possession* of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint;" (emphasis added).

■ This court accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). The defendant's conviction resulted from a reverse sting operation in Clay County. Trooper Clyde Townsend of the Highway Patrol worked undercover in the Narcotics Unit in the Kansas City area in September 1990. He received information from a confidential informant that Justin Parker wanted to buy marijuana. The facts show Parker said he would buy the marijuana from Townsend. Townsend arranged to meet Parker in a room at a motel in Clay County.

Law enforcement personnel rented two adjoining rooms and affixed a small transmitter in the room where Townsend's drug sale would take place. Next door, where the other officers would listen to the transaction and wait for the signal to arrest, they placed a receiver that recorded all the sounds from Townsend's room.

Townsend had a thirty-two pound bale of marijuana in his room wrapped in cellophane and duct tape. Townsend had "checked out" the bale from a locker at Patrol General Headquarters in Jefferson City. Townsend made a small cut into the bale so he could later simulate a cut if Parker wanted to look at the marijuana before purchase.

Parker arrived at the motel in a car with two companions, but entered the room alone. Parker first sold Trooper Townsend some cocaine. The trooper showed Parker the bale of marijuana that was sitting on a dresser. Parker said he wanted to buy the marijuana but his "partners" were in the car. He then asked Townsend if the partners could come into the hotel room. Townsend agreed.

Parker, the defendant, Gasperino, and another man returned to the room. The defendant and the other two men sat on the bed approximately two feet from the dresser. They discussed the deal, and at some point, viewed the marijuana through the cut in the bale. They said they had never seen a block of marijuana that big. They said they would handle it, but they didn't have enough money to buy the whole bale. The buyers finally agreed to purchase about twelve pounds of marijuana for $600 per pound and produced about $7,400. Apparently, the buyers did not have enough money at first, and had to all chip in for the balance of the agreed price.

Parker retrieved approximately half the money. The defendant pulled $3,000 in cash from his sock and gave it to Townsend.

Townsend took the money and counted it, apparently very slowly and loudly, to prepare the other officers for the signal to make the arrest. Townsend had time to stick his knife into the bale to cut off the purchased portion before the other officers burst into the room and made the arrests. Townsend specifically testified none of the buyers, including the defendant, had ever touched the marijuana. At the trial, the jury heard the tape recording of the events. Townsend testified, without objection, the substance was marijuana. He also testified he was a veteran of approximately 200 undercover drug investigations, although this was only his fourth or fifth "reverse" sting.

■ Again, the issues raised include whether the prosecution presented evidence sufficient for the jury to determine 1) whether the substance was marijuana, and 2) whether the defendant had constructive possession of the marijuana. This court finds the State presented evidence sufficient to establish the substance as marijuana. Townsend, an officer with experience in about 200 undercover drug operations, identified the substance as marijuana. He testified he personally obtained the substance, marijuana, from an evidence locker in Jefferson City. The defendant raised no objection to the foundation for this identification; thus, there is some question whether the defendant properly preserved the issue. The defendant never questioned during the trial whether the bale contained a controlled substance. Even if the defendant had preserved the issue, chemical analysis is not required to identify marijuana. An officer may identify the leafy substance based upon his practical experience and training. *State v. Kerfoot*, 675 S.W.2d 658, 661 (Mo.App.1984); *State v. Neal*, 624 S.W.2d 182, 183–84 (Mo.App.1981). The prosecution presented sufficient evidence the substance was marijuana.

The defendant and the State agree Gasperino never had actual, physical possession of the marijuana. The outcome of this case is subject to the decision of whether under § 195.010(33), together with the evidence and favorable inferences, Gasperino could have had constructive possession. That is, although not in actual possession, did Gasperino have the power and the intention to exercise dominion or control over the substance? Can a person have constructive possession of drugs when that person 1) never previously had actual or physical control, and 2) paid the agreed upon price, but was prevented from taking actual or physical possession of the readily accessible drugs by an arrest during a "reverse sting" operation?

■ The defendant raised no question about intent to distribute. The State may rely on reasonable inferences from circumstantial evidence to establish possession. *State v. Adkins*, 800 S.W.2d 28, 30 (Mo.App.1990). To prove possession of a controlled substance, the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance. *State v. Purlee*, 839 S.W.2d 584 (Mo. banc 1992). Our Supreme Court stated in *Purlee*, 839 S.W.2d at 588 (Mo. banc 1992), "... constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." At a minimum, proof of constructive possession requires evidence that the "defendant had access to and control over the premises where the substance was found." Where the premises are under joint control, the State must introduce "some further evidence or admission connecting the accused with the illegal drugs."

■ "In terms of legal theory, constructive possession is figurative actual possession." *State v. Lowe*, 574 S.W.2d 515, 522 (Mo.App.1978). Constructive possession reflects a common sense notion the legislature intended to punish drug offenders who possess a substance even though not on their person at the time of the arrest.

*State v. Mundell,* 822 P.2d 23, 28 (Hawaii App.1991).

Most cases on constructive possession involve factual settings of some prior actual possession by the defendant such as drugs being found in a house, car or some place where the defendant has at least the right of joint control. This case presents a serious question about constructive possession where the defendant never had actual possession of the marijuana. To make the case even more complex, the police set up the reverse sting in a place rented by or under what amounts to the control of law enforcement personnel. Nevertheless, where the defendant does not have exclusive control of the premises, more evidence than mere presence of the controlled substance is necessary to sustain a conviction. *State v. Brown,* 750 S.W.2d 715, 716 (Mo. App.1988).

Gasperino tacitly admits he intended to exercise dominion or control over the marijuana, but alleges he never had the power to do so because of the arrest. On cross-examination, the trooper testified that Highway Patrol policy never condoned actual release of the contraband to a purchaser during one of these buy situations. The fact that the police would never let Gasperino carry the marijuana out of the motel room does not save the day for him. *Campbell v. State,* 577 So.2d 932, 935 n. 5 (Fla.1991).

The court is now left to decide whether the payment in full of the purchase price of the marijuana together with other factors gave the defendant sufficient "power" to exercise dominion and control over the contraband under *Purlee.* The incriminating evidence together with the payment of money provided enough evidence to send the case to the jury to decide whether to convict Gasperino. This court recognizes limits on the doctrine of constructive possession. Florida has held temporary holding of the drugs to inspect before the exchange of money does not sustain a possession conviction. *Campbell v. State,* 577 So.2d at 934, quoting from *Garces v. State,* 485 So.2d 847, 848 (Fla.App.

1986). Similarly, in *Roberts v. State,* 505 So.2d 547, 550 (Fla.App.1987), and *Smith v. State,* 578 So.2d 366, 367 (Fla.App.1991), the courts suggest where the money is not paid or the defendant is sampling or has no immediate right to the drugs in a reverse sting operation, the State can, at best, only sustain an attempt charge.

Recognizing these limits regarding what amounts to constructive possession, *State v. West,* 559 S.W.2d 282, 284–85 (Mo. App.1977), the court finds compelling the evidence of Gasperino's rights after paying $3,000 to have the power to control the substance. That he never would have had actual possession due to police policy, or the fact the officers burst in the room before he could actually pick up the marijuana, does not defeat this action from going to the jury on a constructive possession submission. There is no requirement for constructive possession that a person have had actual possession or absolute certainty the constructive possession will ripen into actual possession. An obviously a large amount of a controlled substance was within two to three feet of Gasperino. Gasperino completed the deal when he paid his money and thought he could leave with the marijuana. The contraband was his— he intended to take it out of the room; the fact he didn't realize he could never have sold the controlled substance, or removed it from the room, does not flaw the submission. This is undoubtedly a close case. The court cautions that courts decided each case of constructive possession on its own facts.

The trial court properly submitted the matter to the jury. *State v. Wiley,* 522 S.W.2d 281, 292–93 (Mo. banc 1975). *See also State v. Keeper,* 787 S.W.2d 887, 888–89 (Mo.App.1990); *State v. Vitale,* 801 S.W.2d 451, 456 (Mo.App.1990).

The judgment of conviction is affirmed.